**NATIONAL SECURITY ARCHIVE, Plaintiff,**

v.

**U.S. DEPARTMENT OF DEFENSE, Defendant.**

**Civ. A. No. 86–3454.**

United States District Court, District of Columbia.

June 16, 1988.

David L. Sobel, Washington, D.C., for plaintiff.

Elisa B. Vela, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case is before the Court on cross-motions for summary judgment. After carefully considering the motions, the opposition to them, the oral arguments of the parties, and the record in this case, the Court concludes that plaintiff's second motion for summary judgment should be denied, and that DoD's motion for summary judgment should be granted.

Plaintiff filed this action under the Freedom of Information Act (the FOIA), 5 U.S.C. § 552, claiming that the United States Department of Defense (DoD) wrongfully refused to consider plaintiff as a preferred institution under the FOIA Amendments of 1986 (the Amendments), 5 U.S.C. § 552(a)(4)(A), for the purposes of fee assessments. Plaintiff, which has numerous FOIA requests pending before the DoD, claims that it should be treated as either an educational institution or as a representative of the news media, and that it therefore should have to pay only duplication fees when it seeks documents. Plaintiff also contends that it is not a commercial requester for the purposes of the Amendments.

DoD contends that the case is not ripe because plaintiff might be entitled to have search and review fees waived if DoD determines pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) that the release of the documents which plaintiff seeks is in the public interest. DoD also contends that its determination that plaintiff is neither an educational institution nor a representative of the news media should be upheld. DoD maintains that its placement of plaintiff in the "other" category of requesters under 5 U.S.C. § 552(a)(4)(A)(ii)(III) is proper.

### I.

It appears that DoD will not process plaintiff's requests unless plaintiff agrees to incur fees for the search and review of documents.[1] Plaintiff will be obligated to pay those fees unless DoD subsequently waives them under the public interest exemption. Thus, DoD would force plaintiff to risk liability for search and review costs before allowing it to seek judicial review of the denial of a waiver based upon status.

■ The Court concludes that DoD's denial of a waiver based upon status is sufficient to render this dispute ripe for judicial review since DoD will not process plaintiff's requests without assessing additional fees. There is a concrete legal dispute, and plaintiff's strong interest in the prompt consideration of the allegedly unlawful agency action is not outweighed by any hardship to the agency or by a significant judicial interest in favor of delay. *See Payne Enterprises, Inc. v. United States,* 837 F.2d 486, 492–494 (D.C.Cir.1988). Furthermore, the legislative history of the 1986 Amendments indicates an intent to have disputes over fee waivers determined at an early stage. *See* 132 Cong.Rec. H 9463 (daily ed. October 8, 1986) (joint analysis of Reps. English and Kindness) ("Agency regulations must include procedures whereby a requester can determine its status for purposes of fee categories … at the time the request is made.").

### II.

Under the Amendments, educational institutions whose purpose is scholarly research, and representatives of the news media are entitled to the waiver of search and review fees if they seek to obtain documents for non-commercial purposes. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Congress did not define the terms "educational institution" or "representative of the news me-

---

1. The parties disputed this point at oral argument on January 26, 1988. In response to the assertion of counsel for DoD that no FOIA requests are being held up, plaintiff submitted a copy of a letter dated September 25, 1987 from a DoD employee, W.M. McDonald, to one of plaintiff's employees, Donna Rich. The letter indicates that absent a commitment to pay search costs exceeding $100, plaintiff's requests will remain on hold unless DoD determines after a brief search that a request is likely to further the public interest.

dia." Instead, it delegated to the agencies the task of promulgating regulations setting forth the procedures and guidelines for determining requests for waivers. 5 U.S.C. § 552(a)(4)(A)(i). The standard of review of the denial of a waiver is *de novo*, and review is limited to the record that was before the agency. 5 U.S.C. § 552(a)(4)(A)(vii).

Defendant adopted a regulation which states in relevant part:

> The term "educational institution" refers to a preschool, a public or private elementary or secondary school, an institution of graduate higher education, an institution of undergraduate higher education, an institution of professional education, and an institution of vocational education, which operates a program or programs of scholarly research....

> The term "representative of the news media" refers to any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public. The term "news" means information that is about current events or that would be of current interest to the public. Examples of news media entities include television or radio stations broadcasting to the public at large, and publishers of periodicals (but only in those instances when they can qualify as disseminators of "news") who make their products available for purchase or subscription by the general public.

32 C.F.R. § 286.33(e)(4) and (7).

In support of its application for a waiver, plaintiff relied in large part upon the lengthy and detailed declaration of its executive director, R. Scott Armstrong. Exhibit C to Amended Complaint, filed June 11, 1987 (Armstrong Decl.). The declaration states that plaintiff is a public interest, scholarly research institute and library, the primary function of which is to make available government information regarding foreign, defense, intelligence and international economic policy. *Id.* at 1. The declaration describes plaintiff's employees and consultants as a collection of scholars and experts in various subject areas. *Id.* at 3–4. Armstrong represents that the bulk of plaintiff's work in the creation of its "archival" services involves the preparation of detailed indexes and finding aids which facilitate the use of the documents for research. *Id.* at 6. Plaintiff's materials are open to the public without charge. *Id.* at 1. Armstrong also notes that plaintiff is a division of the Fund for Peace, Inc., a nonprofit corporation to which the Internal Revenue Service (I.R.S.) has granted tax-exempt status as an entity organized and operated exclusively for educational purposes. *Id.* at 4.

Armstrong represents that plaintiff, its staff, and affiliated scholars have disseminated or will disseminate information in a variety of ways, including: working closely with journalists and scholars (*see, e.g.,* attachments to exhibit B of Plaintiff's Second Motion for Summary Judgment, filed November 20, 1987); publishing an account of the "Iran–Contra Affair"; publishing articles relating to document sets; publicizing plaintiff's holdings; participating in or organizing conferences; and appearing in public forums. *Id.* at 7–8; and Second Declaration of R. Scott Armstrong, filed as exhibit 2 to exhibit B to Plaintiff's Second Motion for Summary Judgment. In the future, plaintiff plans to sell document sets and indexes to libraries. Armstrong Decl. at 8.

■ Plaintiff does not contest DoD's determination that it is neither an education institution nor a representative of the news media within the meaning of DoD's regulations. Thus, looking at the matter *de novo*, the Court has no basis to disagree with DoD's determination under the regulations.[2] However, plaintiff contends that DoD's regulations do not comport with the

---

**2.** Plaintiff appears to urge the Court to review DoD's action without regard to the regulations. Doing so would render both the regulations and Congress's direction to promulgate them meaningless. When Congress leaves gaps in a program by authorizing the agency to adopt implementing regulations, it has delegated to the agency the power to fill those gaps. *Chevron U.S.A., Inc. v. N.R.D.C.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *National Fuel Gas Supply Corp. v. F.E.R.C.,* 811 F.2d 1563, 1569 (D.C.Cir.1987).

intent of the statute in that they are too narrow. Plaintiff asserts that the legislative history of the statute reveals Congress's intent to allow for waivers for an entity like plaintiff within the definitions of either an educational institution or a representative of the news media.

 In reviewing an agency's interpretation of a statute committed to its administration a court must first look to the legislation. *Chevron U.S.A., Inc. v. N.R. D.C.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *Common Cause v. Federal Election Commission,* 842 F.2d 436, 439 (D.C.Cir.1988); *National Fuel Gas Supply Corp. v. F.E.R.C.,* 811 F.2d 1563, 1569 (D.C.Cir.1987). If the statute and its legislative history reveal a clear intent, that intent must be adhered to. *Id.* If, however, they are silent or ambiguous, the agency's construction should be upheld if it is a reasonable one. *Id. National Fuel* indicates that the agency's interpretation is entitled to some deference where it has exercised congressionally granted authority even if it is not clear that the interpretation rests upon technical expertise. 811 F.2d at 1570. Whatever the amount of deference to which it is entitled, the agency's interpretation must harmonize with the statute's origin and purpose to be considered reasonable. *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982).

 Congress did not define the relevant terms in the statute, and it left the task of forming guidelines to the agency. 5 U.S.C. § 552(a)(4)(A)(i). Thus, the language of the statute itself does not resolve the issue here, for depending upon how broadly the language is read, it could support either party's position. Nor does the legislative history of the amendments, which primarily consists of the sponsors' remarks, show a clear intent in plaintiff's favor. If anything, the legislative history reveals a clear congressional decision to deny status waivers to entities like plaintiff.

The remarks of Senator Hatch, a co-sponsor of the Amendments, strongly support the view that Congress did address the issue, and that it did not intend that entities like this plaintiff would obtain a waiver under 5 U.S.C. § 552(a)(4)(A)(ii). *See* 132 Cong.Rec. S 14038, 14040 (daily ed. September 27, 1986). After noting that the fee waiver provision was taken from H.R. 6414, a bill introduced in the 98th Congress, Sen. Hatch stated that "we are removing the language *'nonprofit group that intends to make the information available'* to clarify that organizations seeking to establish private repositories of public records shall not qualify for a waiver."[3] *Id.* (emphasis added). This language had been included in the provision which is now found at 5 U.S.C. § 552(a)(4)(A)(ii)(II). Arguably, the removed language describes plaintiff perfectly, and according to Sen. Hatch, the language was in fact removed to deny a "status" waiver to an entity like plaintiff.[4]

While Sen. Hatch appears to have been in the minority among the sponsors in generally asserting a narrower reading of the Amendments, he certainly was not advocating the "losing" position in regard to the alteration of H.R. 6414. *Compare* 132 Cong.Rec. H 9463 (daily ed. October 8, 1986) (remarks of Rep. English) ("I am not in complete agreement with the Senate changes to [H.R. 6414]."). Given the deletion of express language that would have applied to plaintiff, the Court cannot conclude that Congress clearly intended to include an entity like plaintiff in the remain-

---

3. The language of H.R. 6414 after the word "available" quoted above is "to the news media, any branch or agency of Federal, State or local government, or the general public."

4. Senators Kerry and Leahy appear to discuss the statement of Sen. Hatch in a colloquy which is found at 132 Cong.Rec. S 16496 (daily ed. October 15, 1986). In response to a query from Sen. Kerry regarding the scope of the waivers, Sen. Leahy states in part, "FOIA requesters engaged in the dissemination of information to the public—and that of course is the primary function of libraries and repositories of public documents—would qualify for waiver or reduction of fees under the FOIA." *Id.* The language in Sen. Leahy's response as a whole indicates that he was assuring Sen. Kerry that libraries and other repositories would qualify for waivers or reductions based upon the "public interest" provision in 5 U.S.C. § 552(a)(4)(A)(iii).

ing categories in 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Since the Court cannot conclude that Congress clearly intended that an entity like plaintiff would be entitled to a waiver based upon its status, the Court should uphold DoD's decision not to consider plaintiff to be an educational institution or a representative of the news media if that decision is based upon a reasonable interpretation of the Amendments.

Plaintiff asserts that it is unreasonable to limit educational institutions under the Amendments to schools with programs of scholarly research. It argues that its purpose of educating the public by disseminating government information is sufficient to qualify it as an educational institution. It also contends that the Fund for Peace's tax-exempt status as an educational institution shows that plaintiff should have this status for the purpose of fee waivers.

First of all the fact that the I.R.S. treats the Fund for Peace as an educational institution does not mean that DoD is bound to apply that determination to plaintiff. Secondly, DoD adopted a neutral definition of "educational institution," which although narrow, is hardly irrational when applied to this plaintiff. Apparently, this definition is based upon the definition adopted by the Department of Education for the purposes of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq. See* 34 C.F.R. § 106.2(j). Neither the language of the statute nor the legislative history indicates that every entity which educates the public by making information available should be treated as an educational institution. In fact, the legislative history indicates that libraries and other repositories of documents are to be treated separately from educational institutions. *See supra* pp. 20–21 and *infra* pp. 21–22.

Plaintiff argues that the legislative history of the Amendments shows a clear intent to treat disseminators of information as representatives of the news media. For instance, plaintiff cites to the remarks of Sen Leahy, 132 Cong.Rec. S at 14298, and to the joint analysis of Reps. English and Kindness, 132 Cong.Rec. at H 9464, which state that "[t]he bill provides the most favorable fee provision for those in the information dissemination business...."

Even if the legislative history cited by plaintiff stated the unequivocal intent of Congress, *cf.* 132 Cong.Rec. S 16505 (daily ed. October 15, 1986) (remarks of Sen. Hatch), it would not necessarily preclude DoD's interpretation, which requires the regular publication or broadcast of news. *See* 32 C.F.R. § 286.33(e)(7)(i). The remarks cited by plaintiff, even when they refer to non-traditional media, still seem to contemplate some sort of regular publication, broadcast, or other transmission of news. Plaintiff's function does not appear to be "similar to that of newspapers and broadcasters." Joint Analysis of Reps. English and Kindness at H 9464.

Perhaps the strongest argument in favor of upholding DoD's denial of a waiver to plaintiff is that Congress considered language that would directly address an entity like plaintiff, but it chose to delete that language. *See supra* pp. 20–21; *see also McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (public interest groups are not entitled to a waiver based upon status). In this context it would be hard to consider DoD's interpretation unreasonable. Apparently, plaintiff is trying to obtain a status waiver through the judicial process after entities like it were denied such waivers in the legislative process.

It is not unreasonable to conclude that Congress intended that an entity like plaintiff would be entitled to a waiver or reduction of fees only under the public interest exception at 5 U.S.C. § 552(a)(4)(A)(iii). As is noted *supra* at n. 4, Sen. Leahy appeared to assuage Sen. Kerry's concerns regarding waivers for public interest groups, libraries, and other repositories of government information by assuring him that these entities would qualify for liberal waivers or reductions based upon their use of documents which they request. Even plaintiff asserts that Reps. English and Kindness appeared to refer to entities like itself when they stated in their joint analysis that

A request from a public interest group, nonprofit organization, labor union, library, or similar organization, or a request from an individual may not be presumed to be for commercial use unless the nature of the request suggests that the information is being sought solely for a private, profit making purpose.

Joint Analysis of Reps. English and Kindness at H 9463 (as corrected by statement of Rep. English at 132 Cong.Rec. E 3596 (daily ed. October 10, 1986)), *quoted in* Plaintiff's Second Motion for Summary Judgment at 26. Although educational institutions and media representatives must also pass a noncommercial use test, Reps. English and Kindness appeared to address these remarks to groups in the "other" category under 5 U.S.C. § 552(a)(4)(A)(ii)(III). Those entities are not entitled to waivers of search costs based upon their status.

Even if the *de novo* review standard allowed the Court to disregard the DoD's regulation, 32 C.F.R. § 286.33(e), the agency's determination would be upheld because it is not only a reasonable one, but it is also the one Congress most likely intended.

### III.

DoD asserts that even if plaintiff is an educational institution or a representative of the news media, DoD cannot grant it a blanket fee waiver because it cannot determine that plaintiff is not commercial user. *See* Letter from William McDonald to David L. Sobel, dated November 13, 1987, at 5–6, attached as exhibit C to Plaintiff's Second Motion for Summary Judgment. DoD maintains that plaintiff's intent to sell sets of government documents to libraries prevents a determination that plaintiff is not a commercial organization. *Id.*

The Court need not decide whether plaintiff might be a commercial user in the future, since DoD has placed plaintiff in the "other" category, and it is not treating plaintiff as a commercial user. This issue

is not ripe for adjudication, and a decision based upon events which might occur would be advisory. Here, the Court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting outweigh any interests plaintiff might have in challenging DoD's position at this time.[5]

### IV.

In view of the above, the Court concludes that plaintiff's second motion for summary judgment should be denied, and that DoD's motion for summary judgment should be granted. DoD's determination that plaintiff is neither an educational institution nor a representative of the news media for the purpose of obtaining a waiver of fees under the FOIA should be upheld. A separate Order consistent with this Memorandum has been issued.

---

5. This case is distinguishable from *Payne Enterprises, Inc. v. United States,* 837 F.2d 486, 492–494 (D.C.Cir.1988), where the challenged agency

practice had a direct and immediate impact upon the plaintiff.