FIVE FLAGS PIPE LINE COMPANY,
et. al., Petitioners,

v.

DEPARTMENT OF
TRANSPORTATION,
Respondent.

FIVE FLAGS PIPE LINE COMPANY,
et al., Petitioners,

v.

DEPARTMENT OF
TRANSPORTATION,
Respondent.

Nos. 86–1556, 87–1127.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1988.

Decided Aug. 26, 1988.

Barbara Betsock, Atty., Dept. of Transp., with whom John R. Bolton, Asst. Atty. Gen., Washington, D.C., was on the brief, for respondent.

Gregory Grady, with whom Richard H. Davidson, Washington, D.C., was on the brief, for petitioners.

Before WALD, Chief Judge, and STARR and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

These consolidated petitions for review challenge, on procedural and substantive grounds, two notices issued by the Department of Transportation's Research and Special Programs Administration (RSPA). The notices establish user fee schedules for fiscal years 1986 and 1987 pursuant to section 7005 of the Comprehensive Omnibus Budget Reconciliation Act of 1986 (COBRA), Pub.L. No. 99–272, § 7005, 100 Stat. 82, 140–41 (1986) (codified at 49 U.S.C.A. App. § 1682a (Supp.1988)), that apply to entities operating pipeline facilities subject to regulation under the Natural Gas Pipeline Safety Act, 49 U.S.C. App. § 1671 *et seq.* (1982) (NGPSA) and the Hazardous Liquid Pipeline Safety Act, 49 U.S.C. App. § 2001 *et seq.* (1982) (HLPSA). We do not reach the merits of the challenges presented because we conclude that this court lacks jurisdiction to hear these petitions in the first instance. We further conclude, however, that we should exercise our discretion under 28 U.S.C. § 1631 (1982) to transfer the petitions to the district court for a decision on the merits.

## I. BACKGROUND

Section 7005 of the COBRA directs the Secretary of Transportation to

establish a schedule of fees based on the usage, in reasonable relationship to volume miles, miles, revenues, or an appropriate combination thereof, of natural gas and hazardous liquid pipelines. In establishing such schedule, the Secretary shall take into consideration the allocation of departmental resources.

\* \* \* \* \* \*

[Such user fees] shall be assessed to the persons operating—

(A) all pipeline facilities subject to the Hazardous Liquid Pipeline Safety Act of 1979 ...; and

(B) all pipeline transmission facilities and all liquefied natural gas facilities subject to the jurisdiction of the Natural Gas Pipeline Safety Act of 1968....

49 U.S.C.A. App. § 1682a(a)(1), (3) (Supp. 1988). The fees collected are to be used only for "activities authorized under" the NGPSA and the HLPSA, *id.* at § 1682a(c)(1)–(2), and the sum of fees collected in any fiscal year "shall be sufficient to meet the costs of activities" under the two acts, but is not to "exceed 105 percent of the aggregate of appropriations made for such fiscal year for activities to be funded by such fees." *Id.* at § 1682a(d).

In July 1986, RSPA issued a notice stating that the agency had "adopted pipeline mileage as the fee basis" for natural gas and hazardous liquid pipeline facilities. Pipeline Safety User Fees, 51 Fed.Reg. 25,-782 (July 16, 1986). Included in the fees to be assessed against each operator of these pipelines are a share of total program costs proportionate to the miles of pipeline the operator had in service at the beginning of the applicable fiscal year. Fee assessments for fiscal year 1986 were mailed to individual operators in late July of that year. The notices required payment within 30 days.

Petitioner Five Flags Pipe Line Company tendered its fees under protest, informing RSPA of its view that, because the company was a small intrastate pipeline not subject to NGPSA jurisdiction, section 7005 does not require the company to pay user fees. Five Flags also objected to the RSPA's failure to observe the notice and comment provisions of 5 U.S.C. § 553 (1982) before adopting the fee schedule. Petitioner Association of Texas Intrastate Natural Gas Pipelines also objected to the lack of informal rulemaking procedures, but additionally contended that it is unfair and unreasonable to use pipeline mileage as the basis upon which user fees are determined.

In December 1986, RSPA issued a second notice in which it responded to the objections of petitioners and of others. The agency ultimately decided to re-adopt its previously issued fee schedule for use in fiscal year 1987. Pipeline Safety User Fees, 51 Fed.Reg. 46,975 (Dec. 19, 1986).

Five Flags and Texas Intrastate Pipe Lines petitioned this court for review of both the 1986 and the 1987 user fee notices. RSPA moved to dismiss the petitions, contending that we lack original jurisdiction over them. By order, we deferred ruling on the motion to dismiss until after oral argument on the merits.

## II. JURISDICTION

It is axiomatic that "Congress, acting within its constitutional powers, may freely choose the court in which judicial review [of agency decisions] may occur." *City of Rochester v. Bond,* 603 F.2d 927, 931 (D.C. Cir.1979) (citing *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 78 S.Ct. 1209, 1218–19, 2 L.Ed.2d 1345 (1958)) (footnote omitted). If Congress makes no specific choice of this type in the statute pursuant to which the agency action is taken, or in another statute applicable to it, *see e.g.,* 28 U.S.C. § 2342 (1982), then an aggrieved person may get "nonstatutory review"—a confusing misnomer—in federal district court pursuant to the general "federal question" jurisdiction of that court. *See* 28 U.S.C. § 1331 (1982); *City of Rochester,* 603 F.2d at 931; *see also Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). The "federal question" jurisdiction of the court of appeals, by contrast, may be invoked only after a district court has issued an appeal-

able order. 28 U.S.C. § 1291 (1982); *see Russell v. Law Enforcement Assistance Admin.*, 637 F.2d 354, 355 (5th Cir.1981); *Dillard v. Department of Housing and Urban Development*, 548 F.2d 1142, 1143 (4th Cir.1977).

Here, the petitioners challenge agency action undertaken pursuant to the authority Congress conferred upon the Department of Transportation in section 7005 of the COBRA. Neither that section nor any other section of the COBRA specifies the court in which judicial review of the agency action initially may be had. Petitioners contend, however, that original jurisdiction over their challenges to the user fee notices lies in the court of appeals either under section 8 of the NGPSA, 49 U.S.C. App. § 1675 (1982), or under the All Writs Act, 28 U.S.C. § 1651(a) (1982).

In the initial pleadings on the motion to dismiss, the parties disagreed on the precise language of section 8. Petitioners invoke the codified version of section 8, 49 U.S.C. App. § 1675(a) (1982), which provides for direct review of all regulations "issued under this chapter" in the court of appeals. RSPA, on the other hand, points to the original session law, which provides for review only of "regulations issued under this Act." Pub.L. No. 90–481, § 6, 82 Stat. 724 (1968). This distinction is not merely semantic, for both section 8 of the NGPSA and section 7005 of the COBRA are codified in chapter 24 of Title 49 of the United States Code, so that the user fee notice is issued under the same chapter. Section 7005 is not, however, a provision of "the Act" in which section 8 is found. *See* 49 U.S.C.A. App. § 1682a, codification note (Supp.1988) (§ 7005 of COBRA not enacted as part of NGPSA). Thus, *assuming* the user fee notices are "regulations," this court's original jurisdiction over the petitions for review would appear to depend upon which of the cited versions of section 8 controls.

■ We are not without guidance on this rather arcane issue of statutory construction; Congress has provided the rule of decision. When enacted into positive law, the provisions of the United States Code "shall be legal evidence of the laws therein contained, in all courts of the United

States...." 1 U.S.C. § 204(a) (1982). Until such time as they are enacted as positive law, however, the provisions of the Code are only to be regarded as "prima facie the laws of the United States," *id.*, and the Statutes at Large constitute "legal evidence" of those laws. 1 U.S.C. § 112 (1982). Thus, where the language of the Statutes at Large conflicts with the language in the United States Code that has not been enacted into positive law, the language of the Statutes at Large controls. *See United States v. Welden*, 377 U.S. 95, 98 n. 4, 84 S.Ct. 1082, 1085 n. 4, 12 L.Ed.2d 152 (1964) ("[T]he Code cannot prevail over the Statutes at Large when the two are inconsistent.") (quoting *Stephan v. United States*, 319 U.S. 423, 426, 63 S.Ct. 1135, 1137, 87 L.Ed. 1490 (1943)); *Warner v. Goltra*, 293 U.S. 155, 161, 55 S.Ct. 46, 49, 79 L.Ed. 254 (1934). Because the version of section 8 codified at 49 U.S.C. App. § 1675 has not been enacted into positive law, it is the wording of section 8 found in the Statutes at Large that governs our jurisdiction, and that version does not provide a basis for review in the court of appeals of the agency actions challenged here.

Petitioners nonetheless argue that Congress's silence in section 7005, and the absence of a specific jurisdictional grant in section 8, are not dispositive because the COBRA "is a potpourri of legislation" and Congress could not be expected to insert a judicial review provision for each of the myriad sections and separate titles contained in the legislation. As a result, they contend that we "must infer Congress' jurisdictional choices [when] not plainly governed by statutory language or history." *City of Rochester*, 603 F.2d at 935. Because the user fee notices are "undeniably part of the overall statutory scheme of the NGPSA," petitioners suggest, "logic compels the conclusion that Congress intended that the relief requested ... be sought in the Court of Appeals." The inference that Congress intended the court of appeals to have exclusive jurisdiction over the notices is also indicated, they argue, because the agency "must draw upon the authority provided by *both* Acts (the NGPSA and the [COBRA]) to promulgate the regulations

complained of herein." Finally, the petitioners contend that there are "compelling policy reasons for holding that the jurisdiction of the Court of Appeals [to review the user fee notices] is exclusive." Specifically, they argue that exclusive jurisdiction in this court will promote judicial economy and fairness to litigants because the court of appeals has expertise in NGPSA matters, and it will eliminate duplicative and potentially conflicting review by the district courts.

■ We may agree, *arguendo,* that given the relationship between the user fee notices and the agency activities under the NGPSA that are subject to review exclusively in the court of appeals, sound policy would dictate that judicial review of these agency actions should proceed initially in the court of appeals. And we may further agree that if the legislative language conferring jurisdiction over agency action is ambiguous, then the courts must resolve the ambiguity by reference to what Congress must have intended, in light of its undoubted concerns both with fairness and with judicial economy. *See, e.g., Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 742, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985); *Crown Simpson Pulp Co. v. Costle,* 445 U.S. 193, 197, 100 S.Ct. 1093, 1095, 63 L.Ed.2d 312 (1980); *City of Rochester,* 603 F.2d at 935. In this case, however, section 8 of the NGPSA, unsound though it may be, is not ambiguous in any sense relevant here; and this court simply is not at liberty to displace, or to improve upon, the jurisdictional choices of Congress— even when it legislates by potpourri—no matter how compelling the policy reasons for doing so. We "have just so much jurisdiction as Congress has provided by statute." *Sierra Club v. Thomas,* 828 F.2d 783, 792 (D.C.Cir.1987).

It is, moreover, simply not true that the agency must draw upon its powers under the NGPSA to promulgate the fee schedules authorized by section 7005. Its working experience under, and its interpretations of, the NGPSA are, of course, valuable to the agency in determining how user fees should be assessed. But the *power* to establish fee schedules is found exclusively in section 7005 of the COBRA, and judicial review of the agency's exercise of that power is confined to ensuring consistency with that legislation and with reasoned decisionmaking. To be sure, questions about the meaning of certain provisions of the NGPSA may arise in the course of judicial review of the fee schedules, but that is no reason for concluding that the user fee notices are "regulations issued under [that] Act." Agencies are often called upon to interpret legislation other than that under which they are directly acting, but that does not override the otherwise applicable limitations on a federal court's jurisdiction. The result here may not be an efficient, or even a sensible, one; as creatures of statutes, however, courts can exercise only such power as has been specifically granted them.

Nor does the All Writs Act, 28 U.S.C. § 1651(a) (1982), provide a basis for initial review of the RSPA's user fee schedules in this court. That Act provides that "the Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions...." The petitioners argue that we may review the user fee notices under section 1651(a) because such review is necessary "to protect [our] exclusive jurisdiction over the other natural gas pipeline safety activities which are intertwined with the establishment of the user fees."

There are two problems with this argument. First, the petitioners are mistaken in concluding that the court of appeals has "exclusive" jurisdiction to review all regulatory activities undertaken pursuant to the NGPSA. Section 8 governs only judicial review of "regulations issued under" the NGPSA. Other agency action under the NGPSA, Congress determined, should be reviewed initially in the district courts. For example, the NGPSA assigns original jurisdiction to the district court of actions to enforce compliance orders issued by the agency, 49 U.S.C.A. App. §§ 1677(b)(2), 1679b(b)(4) (Supp.1988); to recover penalties imposed by the agency, 49 U.S.C.A. App. § 1679a(b) (Supp.1988); and to seek equitable relief. 49 U.S.C. App. § 1679b(a)(1) (Supp.1988). In proceedings of these types, the provisions of the

**1442**

NGPSA will necessarily be interpreted and applied; thus, the alleged threat to our "prospective jurisdiction"—interpretations of the NGPSA rendered by the district courts—if a threat it be, is one Congress has specifically endorsed, at least in other contexts.

The second problem with the petitioners' argument is that, while section 1651 does allow a court of appeals to assume jurisdiction over cases when "necessary to protect its prospective jurisdiction," "it is firmly established that section 1651 does not expand the jurisdiction of a court...." *Telecommunications Res. and Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C.Cir.1984) (citing 9 J. MOORE, MOORE'S FEDERAL PRACTICE § 110.26, at 282 (2d ed. 1983)). As we explained in *Sierra Club*, this court may find that, in order "to protect its prospective jurisdiction," it is necessary to hear a claim that an agency has unreasonably delayed the performance of a statutory obligation which, when performed, would be subject to review exclusively in the court of appeals. 828 F.2d at 790. Even then, we may assume jurisdiction over claims of unreasonable delay only if "the agency might forever evade our review and thus escape its duties [while] we awaited final action before reviewing [the] claim." *Id.* at 793. In this case, the agency action is final. There is, moreover, no danger that the agency action complained of here will "forever evade our review," if it is reviewed in the district court initially. Thus, the All Writs Act has no application here.

### III. CONCLUSION

Congress, either intentionally or inadvertently (and we do not know which), failed to specify in the COBRA that direct review of the agency's user fee schedules lies in the court of appeals. We therefore conclude that we lack jurisdiction to hear these petitions for review. Under 28 U.S.C. § 1631 (1982), however, we may, "if it is in the interests of justice, transfer [these petitions] to any other ... court in which [they] could have been brought at the time [they] were filed...." Original jurisdiction in the district court over these petitions may appropriately be invoked pursuant to 28 U.S.C. § 1331 (1982). Given the unique circumstances of this case, and the understandable mistake that petitioners have made in seeking initial review in this court, we conclude that the fairest and most appropriate course is to avail ourselves of the procedure in section 1631. No purpose would be served in dismissing the petitions, and thus requiring the petitioners to refile their challenges in the district court. Refiling may raise potentially nettlesome issues concerning the applicable time limitation for seeking judicial review of the agency action under challenge, a burden that we conclude petitioners should not, in fairness, be required to bear. In the interests of justice and judicial economy, we therefore transfer these petitions for review to the United States District Court for the District of Columbia.

IT IS SO ORDERED.