**MEDIA ACCESS PROJECT, People for the American Way, and Union of Concerned Scientists, Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

No. 88–1760.

United States Court of Appeals, District of Columbia Circuit.

Argued May 25, 1989.

Decided Aug. 29, 1989.

Gigi Beth Sohn, with whom Andrew Jay Schwartzman, Washington, D.C., was on the brief, for petitioners.

Gregory C. Sisk, Atty., Dept. of Justice, Seattle, Wash., with whom Leonard Schaitman, Atty., Dept. of Justice, John R. Bolton, Asst. Atty. Gen., Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and C. Grey Pash, Jr., Counsel, F.C.C., Washington, D.C., were on the brief, for respondents.

Before ROBINSON, MIKVA and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Opinion concurring in part and dissenting in part filed by Circuit Judge D.H. GINSBURG.

MIKVA, Circuit Judge:

Petitioners seek review of Federal Communications Commission ("Commission") regulations that implement, under the Freedom of Information Reform Act of 1986 ("Reform Act"), Pub.L. No. 99–570, 100 Stat. 3207 (codified at 5 U.S.C. § 552(a)(4)(A)), fee waivers for certain Freedom of Information Act ("FOIA") requests.

We find as a threshold matter that we have jurisdiction to decide this case. Because the Commission invoked the Communications Act, 47 U.S.C. §§ 151 *et seq.*, as concurrent authority for its promulgation of the regulations at issue, it is bound by the judicial review provisions of 28 U.S.C. § 2342(1) (giving the court of appeals exclusive jurisdiction to review final Commission orders). We reject petitioners' facial challenge of the regulations, however, because we find the case not ripe for review. The uncertainties surrounding petitioners' claim that they would be denied preferred fee status under the regulations render the issues presented not fit for judicial decision, and we find little hardship in requiring petitioners to pursue their claims before the Commission prior to commencing judicial action. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

I

A. *Petitioners*

Petitioners are three nonprofit organizations that disseminate information about government activities and policies. Petitioner Media Access Project describes itself as a foundation-funded, nonprofit public interest law firm and legal education project that represents citizens' interests before the Commission, other state and federal regulatory bodies, and courts. Petitioner People for the American Way ("PFAW") describes itself as a nonpartisan membership organization that seeks to educate its members and the public about democracy and constitutional liberties, including issues such as government secrecy, education, and civil rights. Petitioner Union of Concerned Scientists ("UCS") describes itself as an independent, membership-supported, nonprofit group concerned about the impact of advanced technology on society, including such issues as nuclear arms control, nuclear power safety, and national energy policy. All three petitioners declare that they use FOIA requests in their public education and advocacy functions.

Petitioners have not filed a FOIA request before the Commission seeking preferred fee status; the challenged regulations have thus not been applied to them, and there is no administrative record to review.

B. *Statutory Provisions*

The Reform Act requires all federal agencies to promulgate notice-and-comment regulations "specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced." 5 U.S.C. § 552(a)(4)(A)(i). Such

fee schedules must conform to uniform fee schedule guidelines promulgated by the Office of Management and Budget ("OMB"). *Id.*

The Reform Act also establishes three levels of fees that the agency may charge, depending on the identity of the requester and the use of the requested information: (1) if records are requested for "commercial use," then fees may include reasonable charges for document search, duplication, and review, *see* 5 U.S.C. § 552(a)(4)(A)(ii)(I); (2) if records are not sought for "commercial use" and if the requester is an "educational or noncommercial scientific institution, whose purpose is scholarly or scientific research" or a "representative of the news media," then fees are limited to reasonable charges for document duplication only, *see id.* § 552(a)(4)(A)(ii)(II); and (3) if the requester is an ordinary or "other" FOIA requester, then the fees are limited to reasonable charges for document search and duplication only, *see id.* § 552(a)(4)(A)(ii)(III). In addition, any requester may seek a general waiver or reduction of fees (for review, search, or duplication), on a case-by-case basis, "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

The Reform Act does not define the terms "commercial use," "educational institution," or "representative of the news media."

## C. *Regulatory History*

Pursuant to Congress' directive in section 552(a)(4)(A)(i), OMB promulgated, after notice and comment, final regulations defining, *inter alia*, "commercial use," "educational institution," and "representative of the news media." *See* 52 Fed.Reg. 10,011 (1987) (codified at 5 C.F.R. §§ 1303.30 *et seq.*).

The Commission then promulgated, after further notice and comment, final regulations establishing its fee schedules and guidelines, adopting verbatim the definitions promulgated by OMB. *See* 3 FCC Rcd. 5107 (1988) (codified at 47 C.F.R. § 0.466). The Commission explicitly premised its authority to issue the regulations on both section 4(i) of the Communications Act, 47 U.S.C. § 154(i), and section 552(a)(4)(A)(i) of the Reform Act, 5 U.S.C. § 552(a)(4)(A)(i). *See* 3 FCC Rcd. at 5110.

The final Commission regulations provide in relevant part:

> The term "commercial use" request refers to a request from or on behalf of one who seeks information for a use or purpose that furthers the commercial, trade, or profit interests of the requester. * * *

> The term "educational institution" refers to a preschool, a public or private elementary or secondary school, an institute of graduate higher education, an institution of professional education and an institution of vocational education, which operates a program or programs of scholarly research.

> \*  \*  \*  \*  \*  \*

> The term "representative of the news media" refers to any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public. The term "news" means information that is about current events or that would be of current interest to the public. Examples of news media entities include television or radio stations broadcasting to the public at large, and publishers of periodicals (but only in those instances where they can qualify as disseminators of "news") who make their products available for purchase or subscription by the general public. These examples are not intended to be all inclusive.

3 FCC Rcd. at 5111 (codified at 47 C.F.R. § 0.466(a)(4), (5), (7)). The Commission rejected comments claiming that these definitions were unduly narrow, explaining that (1) its definition of "representative of the news media" was "sufficiently broad to include other than 'traditional' news media," such as, for example, publishers of newsletters, *id.* at 5108; (2) its definition of

"commercial use" was consistent with "Congress' intent * * * to clarify that commercial users who are representatives of the news media or who qualify for fee waivers are not to be treated as commercial users," *id.;* and (3) its definition of "educational institution" was a "reasonable and permissible interpretation of the statutory term," *id.* at 5109.

## II

Petitioners seek judicial review of the Commission's order establishing the final regulations, arguing that the agency's definitions of the terms "commercial use," "educational institution," and "representative of the news media" are, on their face, contrary to the intent of Congress.

### A. *Jurisdiction*

■ We must first resolve the Commission's threshold argument that we lack jurisdiction over this petition.

At the outset, there is no dispute that, under 28 U.S.C. § 2342(1), the court of appeals has exclusive jurisdiction over "all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." Section 402(a) of title 47 provides for review of "any order of the Commission under this chapter," i.e., the Communications Act, 47 U.S.C. §§ 151 *et seq. See FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984) (*"ITT"*) ("Exclusive jurisdiction for review of final FCC orders, such as the FCC's denial of respondents' rulemaking petition, lies in the Court of Appeals.") (citing 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)).

The Commission argues, however, that petitioners' claims in this case do not implicate the Communications Act in any manner and that therefore 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(b)(1) simply do not apply. Rather, we are told, the sole source of its authority to issue the challenged regulations is the Reform Act, 5 U.S.C. § 552(a)(4)(A), under which general federal question jurisdiction would lie in district court.

The question presented is whether our review is controlled by the Reform Act, which prescribes no particular forum for review, or by the Communications Act, which provides for exclusive review in the court of appeals. Resolution of this question is in turn governed by whether the Commission exercised rulemaking authority granted by the Reform Act or by the Communications Act.

Clearly, the Reform Act conferred authority upon the Commission to adopt these regulations. Our task at this juncture is to inquire whether the Communications Act would also have authorized the action taken here. The Communications Act expressly confers upon the Commission authority to "make such rules and regulations * * * not inconsistent with this chapter [the Communications Act], as may be necessary in the execution of its functions." 47 U.S.C. § 154(i). It would seem to follow that even if the Reform Act had never been enacted, the Commission, in order to respond properly to requests under FOIA, could have adopted the same or similar regulations to govern the charges to be made for responding to FOIA requests. Such regulations would not be inconsistent with the purposes and goals of the Communications Act because they would lead to more efficient processing of FOIA requests. Moreover, compliance with statutory directives, in this case those contained in the Reform Act, is certainly "necessary in the execution of [the Commission's] functions," 47 U.S.C. § 154(i).

Agency authority flowing from one source in neither broadened nor narrowed by a grant of the very same authority from another source. In the case *sub judice,* the Commission possesses a single, specific authority to make rules, although this authority is conferred by two different sources, the Communications Act and the Reform Act. Because each of the sources grants the same authority, when the Commission exercises that authority it is impossible to say that that exercise is exclusively pursuant to either of the two sources. Therefore, review of the Commission's order promulgating these rules, like review of other

Commission orders promulgating rules, must be in the courts of appeals.

Under our view, an agency either has or does not have authority to act by virtue of a given statutory provision, depending upon a proper interpretation of that provision. If an agency invokes a statutory provision that actually does not confer authority on the agency, it would follow that the agency does not have that authority. On the other hand, if a particular statutory provision gives an agency authority, it actually has that authority whether or not it states that it acts pursuant to that statutory provision.

Although no case presents the question in the precise light we face here, several cases address the analytically related question of where review of agency action allegedly contrary to a statutory mandate other than the agency's organic statute should lie. The courts uniformly hold that statutory review in the agency's specially designated forum prevails over general federal question jurisdiction in the district courts.

*National Wildlife Fed'n v. ICC*, 850 F.2d 694 (D.C.Cir.1988), and *Preseault v. ICC*, 853 F.2d 145 (2d Cir.1988), *cert. granted*, ⎯ U.S. ⎯, 109 S.Ct. 1929, 104 L.Ed.2d 401 (1989), dealt with regulations promulgated by the Interstate Commerce Commission interpreting a provision of the National Trails Act, 16 U.S.C. § 1247(d), regarding the conversion of unused railroad rights-of-way to recreational trails. Petitions for review were filed in the court of appeals, which asserted jurisdiction over them pursuant to 28 U.S.C. §§ 2342(5), 2321. The Second Circuit wrote that although

> district courts do have jurisdiction to hear constitutional challenges to statutes where no administrative action has yet been taken[,] * * * after the ICC has issued an order [promulgating regulations], as it has done here, exclusive jurisdiction lies in the circuit court to modify or rescind the order.

*Preseault*, 853 F.2d at 149. Likewise, here, the Commission has issued an order

promulgating regulations, administrative action which we believe invokes our exclusive jurisdiction.

In *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C.Cir.1979), *City of Alexandria v. Helms*, 728 F.2d 643, 645 n. 2 (4th Cir. 1984), and *Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186, 192–93 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 169, 93 L.Ed.2d 106 (1986), the courts found that decisions of the Federal Aviation Administration to proceed with certain plans without requiring environmental impact statements were made pursuant to the agency's organic statute, the Aviation Act, and not under the National Environmental Policy Act ("NEPA"), despite the fact that only NEPA requires the preparation of such a statement in certain circumstances. *See* 42 U.S.C. § 4332(2)(C). Thus, the district courts did not have jurisdiction over challenges to the FAA's action as inconsistent with NEPA; rather, the court of appeals' jurisdiction was exclusive. We observed that

> [i]n the absence of a statute prescribing review in a particular court, "non-statutory" review may be sought in [the] district court under any applicable jurisdictional grant. If, however, there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.

*City of Rochester*, 603 F.2d at 931 (footnotes omitted); *accord General Elec. Uranium Management Corp. v. Department of Energy*, 764 F.2d 896, 903 (D.C.Cir.1985) (" 'where it is unclear whether review jurisdiction is in the district court or the court of appeals, the ambiguity is resolved in favor of the latter' ") (quoting *Denberg v. United States R.R. Retirement Bd.*, 696 F.2d 1193, 1197 (7th Cir.1983)), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984); *Connors v. Amax Coal Co.*, 858 F.2d 1226, 1231 (7th Cir.1988) ("Generally, when jurisdiction to review administrative determinations is vested in the courts of appeals these specific, exclusive jurisdiction provisions preempt district

court jurisdiction over related issues under other statutes.").

Our discussion in *City of Rochester* applies with equal force to the case before us today. We further observed there that the

> rationale for statutory review is that coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts. The choice of forum is * * * for Congress and we cannot imagine that Congress intended the exclusivity *vel non* of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals.

*City of Rochester*, 603 F.2d at 936–37.

Supreme Court and our own precedent are not to the contrary. The Commission argues that in *ITT*, the Court held that a claim against the Commission under the Government-in-the-Sunshine Act, 5 U.S.C. § 552b(b), was properly within the jurisdiction of the district court. *See ITT*, 466 U.S. at 466 n. 2, 104 S.Ct. at 1938 n. 2. By analogy, the Commission reasons, because such claims do not implicate the Commission's authority under the Communications Act, the instant claims are also properly within the jurisdiction of the district court.

We cannot accept this line of reasoning. The crucial distinction, which the Court explicitly recognized, is that the proper forum for review of a *rulemaking*, even if such action is otherwise authorized by a separate statute, is the court of appeals under 28 U.S.C. § 2342(1). *See ITT*, 466 U.S. at 468, 104 S.Ct. at 1939. In the case *sub judice*, the Commission relied on its rulemaking authority under 47 U.S.C. § 154(i), thereby satisfying the plain terms of 28 U.S.C. § 2342(1) and authorizing our exclusive jurisdiction to decide this case. Indeed, had petitioners sought review of the Commission's order in district court, the district court would have been bound to dismiss their claims for lack of jurisdiction for this very reason. *See City of Roch-*

*ester v. Bond*, 603 F.2d 927, 934–37 (D.C. Cir.1979).

The Commission nevertheless maintains that this court does not have original jurisdiction over a petition for review where the challenged regulations are issued pursuant to a statute other than the one giving jurisdiction in the court of appeals. *See Five Flags Pipe Line Co. v. Department of Transportation*, 854 F.2d 1438, 1440–42 (D.C.Cir.1988) (agency action under the Comprehensive Omnibus Budget Reconciliation Act was not reviewable in court of appeals).

In *City of Rochester* we rejected the argument that "special review procedures * * * [apply only to claims] going to the substantive core of an agency's mandate (to which NEPA [or FOIA] would in this case be penumbral)." We noted that although

> such an approach has some intuitional appeal, it would create a substantial uncertainty without discernable benefit. Moreover, it would seriously fragment judicial review, particularly of agencies like the FCC who are governed by open-ended "public interest" language liberally read to incorporate other statutory obligations.

*City of Rochester*, 603 F.2d at 936–37 (citations omitted).

In *Five Flags* two factors combined to deprive this court of jurisdiction. First, the statutory review provision vested jurisdiction in the courts of appeals only over regulations issued under the Natural Gas Policy Act. 854 F.2d at 1440. Second, "the *power* to establish [the] fee schedules at issue [wa]s found exclusively in" the Consolidated Omnibus Budget Reconciliation Act of 1985 rather than also in the Natural Gas Policy Act. *Id.* at 1441 (emphasis in original). Thus, we had no reason "for concluding that the user fee notices are 'regulations issued under the [Natural Gas Policy] Act.'" *Id.* By contrast, the FCC's rulemaking authority is much broader, and we have concluded that it could have issued the challenged regulations even in the absence of the Reform Act.

Our disposition of this case resolves the practicalities of the situation in a way that the dissent's approach fails to do. The dissent admits to requiring a bifurcation for review of Commission orders, directly contravening the policy goal of unifying review in one forum, and creating uncertainty about whether review will be had in the district court or the court of appeals depending on the substantive claim alleged. The dissent's position further suffers from the unfortunate consequence, recognized by the Second Circuit in *Preseault v. ICC,* that "petitioners might prevail on their * * * challenge in a district court but would be unable to obtain relief" because the district court lacks authority to modify or rescind the Commission's order. 853 F.2d at 149; *see also* 28 U.S.C. § 2342 ("court of appeals * * * has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47"). For all of the above reasons, we conclude that we have jurisdiction to review the challenged regulations in this case.

### B. *Commission's Reliance on the OMB Guidelines*

■ Petitioners' first substantive claim is that the Commission unlawfully delegated its independence to OMB by adopting verbatim OMB's guidelines defining the preferred categories for assessment of search fees.

The relevant language of the Reform Act provides that:

> Such schedule [the agency-specific schedule of fees applicable to the processing of FOIA requests] shall conform to the guidelines which shall be promulgated, pursuant to notice and receipt of public comment, by the Director of the Office of Management and Budget and which shall provide for a uniform schedule of fees for all agencies.

5 U.S.C. § 552(a)(4)(A)(i). Petitioners argue that this language means only that OMB's guidelines are binding as to the "uniform schedule of fees" (or "price list"), and that therefore the Commission unlawfully delegated to OMB its duty to make an independent determination as to the fee waiver guidelines. The Commission replies that its verbatim adoption of the OMB guidelines was fully authorized by section 552(a)(4)(A)(i).

We conclude that the Commission's reading of the statute is permissible. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). Section 552(a)(4)(A)(i) plainly delegates authority to establish fee schedules and guidelines to each agency and authority to establish uniform fee schedule guidelines to OMB. If Congress had intended OMB to establish only a "price list," it would not have directed OMB to establish *"guidelines * * * which shall provide for a uniform schedule of fees for all agencies,"* 5 U.S.C. § 552(a)(4)(A)(i) (emphasis added). Petitioners cite no legislative history to the contrary. Rather, they argue that section 552(a)(4)(A)(i) distinguishes between "guidelines for determining when such fees are to be waived or reduced" (the province of each individual agency) and "guidelines * * * which shall provide for a uniform schedule of fees" (the province of OMB). We find, however, that OMB's express mandate to establish fee schedule guidelines is broad enough to encompass guidelines for determining the assessment of fees for statutory categories. Given Congress' desire for a "consistent, government-wide framework for the calculation and collection of FOIA fees," 3 FCC Rcd. at 5107, we hold that the Commission's decision to adopt the OMB guidelines was "rational and consistent with the statute," *NLRB v. United Food & Commercial Workers, Local 23,* 484 U.S. 112, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987).

Petitioners also argue that the Commission's blind adoption of the OMB guidelines deprived them of their right to meaningful notice and comment. It is undisputed,

however, that petitioners were given notice and a full opportunity to comment on both the Commission's and OMB's regulations and that the Commission gave full consideration to comments that did not address matters within OMB's authority, *see* 3 FCC Rcd. at 5107–09. To the extent petitioners assert that the Commission failed to engage in reasoned decisionmaking, they offer no evidence other than the fact that the Commission adopted OMB's guidelines, an action which, as discussed above, the statute permits. Thus, this argument is also without merit.

## C. *Petitioner's Facial Challenge*

■ The essence of petitioners' suit is a facial challenge to the Commission's fee waiver regulations. We hold, however, that due to uncertainties in the actual meaning of the regulations at issue, petitioners' challenge is not ripe for review.

The ripeness doctrine, in its prudential form, is concerned with "the petitioner's interest in prompt consideration of allegedly unlawful agency action[,] * * * the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle–Picher Industries, Inc. v. EPA,* 759 F.2d 905, 915 (D.C.Cir.1985) (footnote omitted). In evaluating ripeness claims, the Supreme Court has instructed reviewing courts to determine "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

Petitioners contend that the Commission's final regulations are sufficiently "crystallized" and will not be modified or abandoned before they are put into effect, and that the issue presented—whether the regulations are arbitrary and capricious—is a "purely legal question," *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1516, which allows the court to "assume its threshold suitability for judicial determination," *Eagle–Picher,* 759 F.2d at 915.

■ We disagree. Where an agency has discretion in the application of the challenged regulations, as in this case, a purely facial challenge may not be ripe for review if the agency could grant the requested relief and thereby obviate the need for judicial review. *See Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967) ("judicial appraisal of [the relevant] factors is likely to stand on a much surer footing in the context of a specific application of [the] regulation than could be the case in the framework of the generalized challenge made here"); *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 940–41 (D.C.Cir.1986); *Air New Zealand Ltd. v. Civil Aeronautics Board,* 726 F.2d 832, 836 (D.C.Cir.1984). In the case *sub judice,* the Commission virtually concedes that petitioners PFAW and UCS would qualify for preferred status as "representatives of the news media." *See Commission Brief* at 36 (PFAW and UCS, for purposes of regular publication of a newsletter or periodical, would qualify for reduced fees). In light of the Commission's discretion in the application of its own regulations, *see Cross–Sound Ferry Services, Inc. v. Interstate Commerce Commission,* 873 F.2d 395, 401 (D.C.Cir.1989), we think the Commission should at least be given the first opportunity to apply its regulations to petitioners. Accordingly, "postponing review would provide for a more efficient examination and disposition of the issues," *State Farm Mutual Automobile Insurance Co. v. Dole,* 802 F.2d 474, 479 (D.C.Cir.1986) (citations omitted), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987). We cannot therefore conclude that the facial challenge raised by petitioners is, at this time, "fit" for judicial review.

Petitioners argue that *Better Government Association v. Department of State,* 780 F.2d 86, 92–96 (D.C.Cir.1986), compels a finding of ripeness in this case, but we are not persuaded. Although the *Better Government* court found that the issue presented in that case (whether certain regulations violated FOIA) was "fit" for judicial review because it was purely legal in

nature, the premise of that finding was that resolution of the legal issue "would not be measurably enhanced by factual illustration." *Id.* at 95. By contrast, resolution of the fact-based disagreement between petitioners and the Commission in this case *would* be measurably enhanced by further factfinding. Without an administrative record, we cannot confidently evaluate whether the Commission's regulations are facially unlawful, because the premise of petitioners' case—that the Commission would construe the regulations to deny them preferred fee status—has been questioned by the Commission itself.

Moreover, we do not perceive any significant hardship to petitioners as a result of our withholding of review.

> A case may lack ripeness * * * even when it involves a final agency action presenting a purely legal question. The second prong of the ripeness test requires that the contested action impose an impact on the parties "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." * * * The mere *potential* for future injury * * * is insufficient to render an issue ripe for review.

*Alascom, Inc. v. FCC,* 727 F.2d 1212, 1217 (D.C.Cir.1984) (footnotes omitted) (quoting *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517). In the instant case, petitioners could apply for preferred fee category status under the Commission's regulations and, if denied, could obtain judicial review and present the court with a concrete factual record as to whether the Commission's regulations comport with congressional intent. We discern no real hardship or strategic disadvantage in requiring petitioners to apply for fee waiver status through the administrative process prior to seeking judicial review, particularly when such a route, far from being futile, would likely prove successful. *See Webb v. Department of Health and Human Services,* 696 F.2d 101, 107 (D.C.Cir.1982) ("the burden of having to file another suit * * * is hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form") (footnote omitted); *cf. National Security Archive v. Department of Defense,* 880 F.2d 1381 (D.C.Cir.1989) (petitioner sought judicial review after administrative denial of FOIA fee waiver); *Better Government,* 780 F.2d at 88 (same).

Petitioners point to two other hardships presented by withholding judicial consideration: Petitioners would have to pay higher FOIA fees, and other similar organizations would, for the same reason, be deterred from submitting FOIA requests. *See Better Government,* 780 F.2d at 94 (finding hardship to petitioners because the challenged regulations "discourage FOIA requests and impede access to information for precisely those groups Congress intended to aid"). This line of reasoning, however, overlooks the fact that petitioners would "presumably," according to the Commission, be able to challenge a denial of preferred fee classification without advance payment of fees. *See National Security Archive v. Department of Defense,* 690 F.Supp. 17, 18 (D.D.C.1988). Construing this statement as committing the Commission to such a policy, we cannot conclude that the impact of the Commission's regulations is "felt immediately by those subject to it in conducting their day-to-day affairs, * * *." *Action Alliance,* 789 F.2d at 941 (citation omitted). On balance, we therefore find that the interest in postponing review outweighs the asserted hardship.

In sum, the Commission, whose interpretation of its own regulations must be given at least some deference, concedes that its regulations are sufficiently broad to grant preferred status to at least two of the petitioners in this case. If the Commission grants a future request by petitioners for preferred status, there is simply no case or controversy. If the request is denied, petitioners can seek immediate judicial review of the denial. We find little hardship to petitioners, and great benefits for reviewing courts (in the form of a concrete dispute and a complete factual record), in requiring such a course of action.

Because we hold that petitioners' facial challenge to the Commission's Reform Act regulations is not ripe for review, we of course express no opinion on either the

merits of petitioners' arguments or on the Commission's other arguments.

### III

We assert jurisdiction in this case under 28 U.S.C. § 2342(1) in light of the Commission's concurrent invocation of the Communications Act, 47 U.S.C. §§ 151 *et seq.*, as authority for its promulgation of the regulations at issue. We reject petitioners' claim, however, that the Commission unlawfully adopted the OMB's fee schedule guidelines. We hold, in addition, that petitioners' facial challenge is not ripe for review. The uncertainties surrounding petitioners' claim that they would in fact be denied preferred fee status under the regulations render the issues presented not fit for judicial decision. Moreover, we find little hardship in requiring petitioners to pursue their claims before the Commission prior to commencing judicial action. Accordingly, the petition for review is

*Denied.*

D.H. GINSBURG, Circuit Judge, concurring in part and dissenting in part:

In my view, the court lacks jurisdiction over this petition for review. The FCC rulemaking at issue was not done "under" the Communications Act of 1934 within the meaning of 47 U.S.C. § 402(a) ("any order of the Commission under this chapter"), and therefore does not trigger the exclusive jurisdiction of the court of appeals under 28 U.S.C. § 2342(1).

The Freedom of Information Reform Act states that "each agency shall promulgate regulations ... specifying the schedule of fees applicable to the processing of [FOIA] requests...." 5 U.S.C. § 552(a)(4)(A)(i). This the Commission has done. As it stated, and as is perfectly clear, the regulation under review "implements requirements enacted under the [Reform Act]," 3 FCC Rcd 5107 (1988); they do not implement any provision of the Communications Act. As the court says, the question before us is "whether our review is controlled by the Reform Act ... or by the Communications Act," and the answer is "governed by whether the Commission exercised rulemaking authority granted by the Reform Act or by the Communications Act." Ct.Op. at 7. Again, as the court says, the answer is clear: "Clearly, the Reform Act conferred authority upon the Commission to adopt these regulations." *Id.*

It is not clear, however, why the court thinks that "[o]ur task at this juncture is to inquire whether the Communications Act would also have authorized the action taken here." *Id.* Perhaps it is because the Commission invoked the Communications Act as an additional source of authority for the regulation, 3 FCC Rcd at 5110, yet one can hardly assume that Congress intended the Commission to control the path of review by the mere recitation of authority. I can conceive of no other justification for the Communications Act inquiry. Indeed, the court's alternative speculation that "if a particular statutory provision gives an agency authority, it actually has that authority *whether or not it states that it acts pursuant to that statutory provision*," Ct.Op. at 1067 (emphasis added), appears squarely at odds with the holding of *SEC v. Chenery Corp.*, 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted ... were those upon which its action can be sustained.").

The court strains itself—and the law—in the service of a generally sensible "policy goal of unifying review in one forum." Ct.Op. at 1069. In the present context, however, a single forum for review of one agency's orders creates non-uniform review of the same orders as issued by myriad other agencies. A petition to review one agency's regulation implementing the Reform Act will, in the first instance, come before the district court, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), *see, e.g., National Security Archive v. Department of Defense*, 880 F.2d 1381 (D.C.Cir.1989), while a petition to review the very same regulation, as issued by another agency (ostensibly, as here, under an organic statute that provides for review in the court of appeals), will take a different

route. There is no indication that Congress ever contemplated such an arbitrary bifurcation in the path of review when it authorized rulemaking under the Reform Act. I would thus find inapplicable the provision authorizing this court to review rules issued "under" the Communications Act.*

For me, the next question is whether "it is in the interest of justice [to] transfer such action ... to [the district] court in which the action ... could have been brought at the time it was filed or noticed...." 28 U.S.C. § 1631. In this case, the interests of justice require that we transfer, rather than dismiss, petitioners' (concededly ripe) claim that "the FCC unlawfully delegated its independen[t rulemaking power] to OMB." The source of petitioners' error in seeking review in this court is chargeable to the FCC itself, which confused matters by invoking the Communications Act in the first place.

Under § 1631, a futile transfer is not required, however. Since petitioners' challenge to the substance of the FCC regulation can be seen from its face to be unripe, for the reasons given in the opinion of the court, a transfer of that claim would be futile. *See Alvarez v. United States*, 9 Cl.Ct. 311, 312 (1985) (no transfer when plaintiff failed to exhaust administrative remedies); *Busby School of Northern Cheyenne Tribe v. United States*, 8 Cl.Ct. 588, 595 (1985) (same). Accordingly, the court need not transfer petitioners' substantive claim to the district court but, in the interest of judicial economy, may itself dismiss the petition for review in that regard.

---

* The court sees in this result an "unfortunate consequence": that the district court might be without authority to provide relief against a Commission order. Ct.Op. at 1069. The observation that only the court of appeals may pro-

vide relief against orders of the Commission "made reviewable by [the Communications Act]," 28 U.S.C. § 2342, begs the question of whether the orders here under review were, in fact, promulgated "under" that Act.