# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 5, 2016　　　　　Decided March 18, 2016

No. 14-1240

THE LOAN SYNDICATIONS AND TRADING ASSOCIATION,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION AND BOARD OF
GOVERNORS OF THE FEDERAL RESERVE SYSTEM,
RESPONDENTS

Consolidated with 14-1304

On Petitions for Review of a Final Order of the
Securities & Exchange Commission and
the Board of Governors of the Federal Reserve System

*Richard D. Klingler* argued the cause for petitioner. With him on the briefs were *Peter D. Keisler* and *Jennifer J. Clark*.

*Carl J. Nichols*, *Stephen V. Carey*, *Kate Comerford Todd*, and *Steven P. Lehotsky* were on the brief for *amicus curiae* the Chamber of Commerce of the United States in support of petitioner.

*Joshua P. Chadwick*, Senior Counsel, Board of Governors of the Federal Reserve System, argued the cause

for respondents. With him on the brief were *Richard M. Ashton*, Deputy General Counsel, *Katherine H. Wheatley*, Associate General Counsel, *Michael A. Conley*, Deputy General Counsel, Securities and Exchange Commission, *John W. Avery*, Deputy Solicitor, *Randall W. Quinn*, Assistant General Counsel, and *Nicholas J. Bronni*, Senior Counsel.

*Dennis M. Kelleher* and *Stephen W. Hall* were on the brief for *amicus curiae* Better Markets, Inc. in support of respondents.

Before: GARLAND, *Chief Judge*, BROWN, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion filed for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: In the law, as in life, the simplest explanation is sometimes the best one. *Cf. Commodity Futures Trading Comm'n v. Zelener*, 373 F.3d 861, 868 (7th Cir. 2004) (Easterbrook, J.) ("Best to take Occam's Razor and slice off needless complexity."). So it is here. This case concerns a challenge, brought directly in this court, to a joint regulation implementing a section of the Securities Exchange Act of 1934 (Exchange Act). *See* 15 U.S.C. § 78*o*-11. Congress added that particular section to the Exchange Act in the sprawling Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act). *See* Pub. L. No. 111-203, § 941, 124 Stat. 1376 (2010).

We have jurisdiction to hear petitions for direct review of agency action when Congress says so. *See Sierra Club v. Thomas*, 828 F.2d 783, 792 (D.C. Cir. 1987) ("[C]ourts have just so much jurisdiction as Congress has provided by statute."). The Exchange Act provides a limited grant of jurisdiction. Only rules implementing specific, enumerated

sections of the Act are entitled to direct review. *See* 15 U.S.C. § 78y(b)(1). The section at issue here is not among them. Because Congress knew how to add sections to that list, but chose not to do so here, we conclude that we lack jurisdiction. *See Am. Petrol. Inst. v. SEC*, 714 F.3d 1329, 1333 (D.C. Cir. 2013). To escape the confines of the Exchange Act, the parties argue that other statutes with direct review provisions provide authority for parts of the rule. But whatever authority those other statutes may provide, neither party suggests those statutes could have authorized the *joint* rule we are asked to review.

Unable to exercise review ourselves, we transfer the petitions "in the interest of justice" to the United States District Court for the District of Columbia. *See* 28 U.S.C. § 1631.

## I

Enacted two years after the financial crisis of 2008, the Dodd-Frank Act spelled a sea change in the regulation of the nation's financial markets. Section 941 of the Act, at issue in this case, took aim at abuses in the packaging and sale of asset-backed securities, which some in Congress considered "a major contributing factor" to the financial crisis. S. Rep. No. 111-176, at 128 (2010).

To recalibrate the incentives that fueled "excesses and abuses," *id.*, Congress required "securitizers"—a term of art generally referring to those who issue or organize asset-backed securities—to retain at least five percent of the underlying credit risk, *see* 15 U.S.C. § 78*o*-11(a)(3), (b)(1). Congress tasked four agencies with responsibility for implementation: the Securities and Exchange Commission (Commission), the Board of Governors of the Federal Reserve

System (Board), the Federal Deposit Insurance Corporation (FDIC), and the Office of the Comptroller of the Currency (OCC). The agencies were required to "*jointly* prescribe regulations to require any securitizer to retain an economic interest in a portion of the credit risk for any asset that the securitizer, through the issuance of an asset-backed security, transfers, sells, or conveys to a third party." 15 U.S.C. § 78*o*-11(b)(1) (emphasis added). Pursuant to that mandate, the agencies issued the Credit Risk Retention Rule on December 24, 2014. 79 Fed. Reg. 77602, 77602 (Dec. 24, 2014).

In this petition, a trade group, the Loan Syndications and Trading Association (LSTA), challenges several aspects of the rule as contrary to law or arbitrary and capricious. LSTA takes particular issue with the agencies' decision to extend the credit risk retention requirement to managers of open market collateralized loan obligations, which are "specialized investment vehicle[s] designed to invest" in large loans issued to companies without strong credit. Br. for Chamber of Commerce of the United States as Amicus Curiae 5–6.

As it turns out, LSTA's challenge on the merits will have to wait. "They have sought review of agency action in the 'wrong' court." *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979).

**II**

**A**

In 1946, soon after the dawn of the administrative state, Congress passed the Administrative Procedure Act (APA), a seminal statute that prescribes the standard of review applicable to agency actions. *See* APA of 1946, 5 U.S.C. § 551 *et seq*. While the APA says *how* to review agency

actions, it says next-to-nothing about *where* that review should take place (*e.g.*, in particular district courts or courts of appeals).[1] *See* Joseph W. Mead & Nicholas A. Fromherz, *Choosing a Court to Review the Executive*, 67 ADMIN. L. REV. 1, 7 (2015). Congress generally answers the "where" question on a statute-by-statute basis. For that reason, the U.S. Code is littered "with thousands of compromises dividing initial review of agency decisions between district and circuit courts." *Id.* at 2.

Amidst this complicated legal landscape, we can nevertheless deduce some general principles. "Because district courts have general federal question jurisdiction under 28 U.S.C. § 1331, the 'normal default rule' is that 'persons seeking review of agency action go first to district court rather than to a court of appeals.'" *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994)). Parties may proceed directly to the courts of appeals only when authorized by a specific direct-review statute. *Id.* Our "jurisdiction under a direct review statute is strictly limited to the agency action(s) included therein." *NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013).

Placing initial review of agency actions in the courts of appeals often makes good sense. "[A]gencies typically compile records," rendering the district court's "factfinding capacity . . . unnecessary." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). And because appeals are all but guaranteed, requiring district court review may only add delay and expense. Those factors in mind, we interpret ambiguities

---

[1] Section 703 of Title 5 provides, somewhat unhelpfully, that judicial review of agency action takes place in the "court specified by statute or, in the absence or inadequacy thereof," "in a court of competent jurisdiction." 5 U.S.C. § 703.

in direct-review statutes in favor of appellate jurisdiction, "[a]bsent a firm indication that Congress intended to locate APA review of agency action in the district courts." *Id.* at 745. But this presumption, however helpful, cannot overcome the commands of Congress. Ultimately, "[w]hether initial subject-matter jurisdiction lies initially in the courts of appeals must of course be governed by the intent of Congress and not by any views we may have about sound policy." *Id.* at 746.

**B**

By its own terms, the Credit Risk Retention Rule at issue implemented a section of the Exchange Act added by the Dodd-Frank Act. *See* 79 Fed. Reg. at 77602 (explaining that the agencies "are adopting a joint final rule . . . to implement the credit risk retention requirements of section 15G of the Securities Exchange Act of 1934," codified at 15 U.S.C. § 78*o*-11, "as added by section 941 of the Dodd-Frank" Act). The Exchange Act contains what we have described as a "carefully constructed jurisdictional scheme," codified at 15 U.S.C. § 78y. *Am. Petrol. Inst.*, 714 F.3d at 1334.

We consider first the text and structure of that jurisdictional scheme. The Exchange Act treats challenges to orders and rules differently. Under section 78y(a), challenges to orders may be heard directly in the courts of appeals. 15 U.S.C. § 78y(a)(1). Not so for rules. Section 78y(b)(1) provides that challenges to "rule[s] of the Commission promulgated pursuant to section 78f, 78i(h)(2), 78k, 78k-1, 78*o*(c)(5) or (6), 78*o*-3, 78q, 78q-1, or 78s of this title may" proceed directly to the relevant court of appeal. *Id.* § 78y(b)(1). Challenges to rules implementing *other* sections must begin in district court. *See Am. Petrol. Inst.*, 714 F.3d at 1332–33.

While section 78y(b)(1) speaks of "rule[s] of the Commission," Congress recognized that other agencies may be charged with rulemaking authority under the Exchange Act.  Section 78y(d) provides that "the term 'Commission'" in the direct review statute "includes the agencies enumerated in section 78c(a)(34) of this title insofar as such agencies are acting pursuant to this chapter."  15 U.S.C. § 78y(d)(1).  The Board, FDIC, and OCC are among the agencies enumerated in section 78c(a)(34).  *See id.* § 78c(a)(34)(A).  Of those, only the Board is party to this case.  We therefore read subsection (b)(1)'s reference to "rule[s] of the Commission" to include the Board, insofar as the Board exercised authority granted by the Exchange Act.  *See id.* § 78y(b)(1).

Because LSTA challenges a rule, the "operative provision" is 78y(b)(1).  *See Am. Petrol. Inst.*, 714 F.3d at 1333.  Under that section, only rules implementing certain sections of the Exchange Act may proceed directly to the courts of appeals.  Here, the agencies implemented section 78*o*-11 of the Exchange Act.  *See* 79 Fed. Reg. at 77602.  Section 78*o*-11 is not listed in section 78y(b)(1), and we treat the Board as the Commission under subsection (d).  Arguably, the district court—not this court—has jurisdiction to hear this challenge.  *See* 28 U.S.C. § 1331.

A review of legislative history supports that conclusion.  "As originally enacted in 1934, the Exchange Act contained only section [78y](a)'s grant of original appellate jurisdiction to review Commission final orders."  *Am. Petrol. Inst.*, 714 F.3d at 1334.  "[T]he omission of rules or regulations . . . was no mere oversight on the part of Congress."  *PBW Stock Exch., Inc. v. SEC*, 485 F.2d 718, 723 (3d Cir. 1973).  It instead reflected "a clear and unequivocal intention to insulate Commission rules or regulations from review."  *Id.* at 726.

In 1975, Congress changed course, amending the Exchange Act to provide for direct review of rules—but not all rules. In what is now codified at 78y(b)(1), Congress "establish[ed] a statutory review procedure for *certain* SEC rules." S. Rep. No. 94-75, at 36 (1975) (emphasis added). According to the legislative history of the 1975 amendments, Congress targeted certain sections of the Act "directly relating to the operation or regulation of the national market system, a national clearing system, or the SEC's oversight of the self-regulatory organizations." *Id.*

In keeping with that narrow focus, Congress has only once added a provision to the list. *See Am. Petrol. Inst.*, 714 F.3d at 1335. In 1990, Congress enacted the Market Reform Act which, among other things, "prohibited practices adversely affecting market volatility." *Id.* The Act simultaneously amended section 78y(b)(1) to provide for direct appellate review of rules implementing that prohibition. *Id.*; *see* Market Reform Act of 1990, Pub. L. No. 101-432, § 6, 104 Stat. 963, 975.

By contrast, Congress did not add section 78*o*-11 to the list of provisions entitled to direct review. As we concluded in a similar case involving a section of the Exchange Act added by the Dodd-Frank Act, that omission "suggests quite clearly that Congress, for whatever reason, intended challenges to section [78*o*-11] regulations to be brought first in the district court." *Am. Petrol. Inst.*, 714 F.3d at 1335. In light of the clarity of the Exchange Act's direct-review provision, the presumption in favor of appellate review does not apply. *See id.* at 1336 (failing to identify any ambiguity in the Exchange Act's direct-review provision). Mindful that our "jurisdiction under a direct review statute is strictly limited to the agency action(s) included therein," we conclude

that jurisdiction lies in the district court. *See NetCoalition*, 715 F.3d at 348.

## C

In hopes of slipping that conclusion, the parties claim we have jurisdiction based on the agencies' invocation of other statutes, some of which contain direct-review provisions, in the "authority, purpose and scope" provisions of the challenged rule. *See* 79 Fed. Reg. at 77764–66. We disagree.

In keeping with Congress's requirement to "jointly" promulgate the rule, 15 U.S.C. § 78*o*-11(b)(1), the agencies developed a single, common rule. Each agency published identical versions of the rule in its respective section of the Code of Federal Regulations. As the parties point out, each of those separate codifications included short appendices that invoked a number of statutes as authority in addition to section 78*o*-11. *See* 79 Fed. Reg. at 77764–66. Scattershot in nature, these sections listed other statutes without explaining their relevance. The Commission's separate codification, for instance, purported to rely on two other statutes, citing ten specific sections. *Id.* at 77766. Not to be outdone, the Board invoked five other statutes as sources of authority. *See id.* at 77764.

Based on these separate invocations, the parties suggest we have jurisdiction under any of three statutes that provide for direct review: (1) the Securities Act of 1933 (Securities Act), 15 U.S.C. § 77 *et seq.*; (2) the Exchange Act (based on sections 78*o*(c)(5) and (6)); (3) and the Bank Holding Company Act of 1956 (BHCA), 12 U.S.C. § 1841 *et seq.* We take each in turn.

The Securities Act authorizes direct review of Commission "order[s]" made under that Act.[2] 15 U.S.C. § 77i(a). In addition to the Dodd-Frank Act, the Commission invoked sections 7, 10, 19(a) and 28 of the Securities Act. The parties focus on section 7, codified at 15 U.S.C. § 77g(c), which authorizes the agency to require the disclosure of information. They suggest that section justifies elements of the joint rule requiring the disclosure of information concerning asset-backed securities. *See, e.g.*, 79 Fed. Reg. at 77742 (directing sponsors of asset-backed securities to provide certain disclosures).

Moving to the Exchange Act, we have established that the Act's direct-review provision allows limited review of rules. The Commission's separate codification invoked section 78*o* of the Exchange Act as an additional source of authority. Within section 78*o*, only subsections 78*o*(c)(5) and (6) receive direct review. *See* 15 U.S.C. § 78y(b)(1). Those particular subsections—neither of which the Commission specifically invoked—give the Commission certain powers to regulate broker-dealers. Seizing on the fact that the joint rule potentially reaches broker-dealers who sponsor asset-backed securities transactions, the petitioner suggests that these jurisdictional provisions are in play. *See* 79 Fed. Reg. at 77611; *see* Pet. Resp. to Order to Show Cause 12.

---

[2] The instant case, of course, concerns a rule, not an order. While we need not decide the issue, we note that it is "blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules." *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1129 (D.C. Cir. 2015); *see also Am. Equity Inv. Life Ins. Co. v. SEC*, 613 F.3d 166 (D.C. Cir. 2009) (reviewing a petition challenging a rulemaking pursuant to the Securities Act without commenting on jurisdiction).

The parties hang most of their hopes, however, on the BHCA. That statute "vests broad regulatory authority in the Board over bank holding companies to . . . prevent possible abuses related to the control of commercial credit." *Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 365 (1986) (omitting internal quotation and citation). Orders and rules made pursuant to the BHCA may be challenged directly in the courts of appeals. *See* 12 U.S.C. § 1848; *see also Inv. Co. Inst. v. Bd. of Governors of Fed. Reserve Sys.*, 551 F.2d 1270, 1278 (D.C. Cir. 1977) (interpreting the term "order" in 12 U.S.C. § 1848 to include rules). The parties pin jurisdiction on the assumption that the Board could have imposed on bank holding companies risk retention obligations similar to those in the joint rule.

None of these statutes changes our conclusion that jurisdiction rests with the district court. The joint nature of the rulemaking makes this case unique. Our past cases tended to involve relatively simple rules issued by a single agency. In *Media Access Project v. FCC*, for instance, we considered a rule implementing a requirement in the Freedom of Information Reform Act of 1986 (Reform Act) to set fees in FOIA requests. 883 F.2d 1063, 1064–65 (D.C. Cir. 1989). Although the Reform Act did not provide for direct review, we found jurisdiction in the direct-review provision of the Communications Act, which the rulemaking invoked as additional authority. *See id.* at 1066. Even in the absence of the Reform Act, the expansive grant of authority in the Communications Act could have justified a rule reforming FOIA practices. *See id*.; *see also* 47 U.S.C. § 154(i) (empowering the FCC to "make such rules and regulations . . . as may be necessary in the execution of its functions").

Similar reasoning led this court to find appellate jurisdiction in *International Brotherhood of Teamsters v. Pena*. 17 F.3d 1478, 1481–82 (D.C. Cir. 1994). There, the Federal Highway Administration (FHWA) issued a rule recognizing the validity of commercial drivers' licenses issued by Mexico. *See id.* The rule relied on two general grants of statutory authority, only one of which provided for direct review. *See id.* Without any reason to doubt that either statute colorably supported the rule, the "explicit reliance on *both*" statutes supported our jurisdiction. *See id.* at 1482.

In *Pena* and *Media Access Project*, the agencies could colorably rely on broad grants of organic statutory authority. We confront a different scenario in this case. Congress instructed the agencies to issue a *joint* rule—a rule that neither party suggests the agencies had authority to promulgate on their own. Indeed, the petitioner concedes that "none of the individual agencies could have separately passed the entirety of the rule." *See LSTA v. SEC*, Nos. 14-1240, 14-1304, Oral Argument Tr. 8 (D.C. Cir. Feb. 5, 2016).

Consider, for instance, the Board's authority. At oral argument, government counsel admitted that the Board could "not" have issued an "identical" rule. *See LSTA v. SEC*, Nos. 14-1240, 14-1304, Oral Argument Tr. 61 (D.C. Cir. Feb. 5, 2016). Instead, we are told that the Board could have issued a rule requiring bank holding companies to retain risk. Even so, that rule is not *this* rule, which was promulgated jointly and reaches "securitizers" of all kinds, not only banks. *See, e.g.*, 79 Fed. Reg. at 77608–09 (defining the statutory term "securitizer" to include, broadly speaking, anyone who "sponsor[s]" an asset-backed securities transaction). The same holds for other statutes on which the parties rely. Whatever their import, the parties do not suggest those statutes colorably authorized the joint rule before the court.

In light of the unique nature of this joint rulemaking, and the parties' concession that other statutes did not justify the final rule, we conclude that the agencies relied on the grant of authority in section 78*o*-11 of the Exchange Act. *See* 79 Fed. Reg. at 77602 (stating that the agencies "are adopting a joint final rule . . . to implement the credit risk retention requirements of section 15G of the Securities Exchange Act of 1934"). The Exchange Act, in turn, does not permit direct review of rules implementing section 78*o*-11. *See* 15 U.S.C. § 78y(b)(1); *see id.* § 78y(d)(1) (directing courts to treat the Board as the Commission "insofar as" the Board "act[s] pursuant to" the Exchange Act).

In the absence of any statute that colorably provides jurisdiction for direct review of this joint rule, we have no occasion to apply the doctrine of pendant appellate jurisdiction. Discretionary in nature, that doctrine permits us to hear claims over which we otherwise lack jurisdiction that are "closely related" to claims over which we have jurisdiction. *See Pub. Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1288 (D.C. Cir. 2007); *see also Shell Oil Co. v. FERC*, 47 F.3d 1186, 1195 (D.C. Cir. 1995) ("[W]here an agency order arising from a common factual background and addressing a common question of law relies on two statutory bases that give rise to separate paths for judicial review, the entire order should be reviewed . . . in the court of appeals."). Because none of the statutes on which the parties rely support jurisdiction, we have nothing to which pendant jurisdiction may attach.

In any event, we would decline to exercise pendant appellate jurisdiction in this case. *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1136 (D.C. Cir. 2004) ("[W]hether or not we have authority to exercise

pendent appellate jurisdiction in this case, there is no question that we have discretion to decline to do so."). Our pendant jurisdiction must be exercised "'sparingly' and 'only when substantial considerations of fairness or efficiency demand it.'" *Pub. Citizen, Inc.*, 489 F.3d at 1288 (quoting *Kilburn*, 376 F.3d at 1133). "Discretionary considerations of 'fairness or efficiency' do not authorize us, however, to disregard plain statutory terms assigning a different court initial subject-matter jurisdiction over a suit." *Id.*

Consequently, petitioners must proceed in district court. Because the district court has jurisdiction to review the entire regulation, our decision poses no risk of denying the parties a "forum capable of treating the case coherently." *See Int'l Bhd. of Teamsters*, 17 F.3d at 1482.

## III

In the end, the simplest explanation is the right one. The Credit Risk Retention Rule implemented section 78*o*-11's command to craft a joint rule of wide application. For reasons unknown, Congress failed to include that section among those entitled to direct review. *See* 15 U.S.C. § 78y(b)(1). As a result, we lack jurisdiction.

The simplest solution is not always the most satisfying. Both parties understandably want finality. With every passing day, the rule's compliance deadline of December 24, 2016, marches closer. *See* 79 Fed. Reg. at 77602. Requiring the parties to proceed in district court no doubt costs the parties time and money, and leaves regulated parties in a state of suspense. Indeed, "sound policy" may well "dictate that judicial review of these agency actions should proceed initially in the court of appeals." *Five Flags Pipe Line Co.*, 854 F.2d at 1441.

But "this court simply is not at liberty to displace, or to improve upon, the jurisdictional choices of Congress"—"no matter how compelling the policy reasons for doing so." *Id.* By limiting direct review to certain sections of the Exchange Act, Congress "knew it would be sending some cases to the district court that" could be resolved more efficiently at the appellate level. *See Am. Petrol. Inst.*, 714 F.3d at 1337. As a court of limited jurisdiction, we must take our cues from Congress, not from considerations of sound policy. *See Five Flags Pipe Line Co.*, 854 F.2d at 1441 ("[A]s creatures of statutes, however, courts can exercise only such power as has been specifically granted them.").

Congress has provided a mechanism that mitigates the disruption and delay occasioned by our decision. Under 28 U.S.C. § 1631, when we find jurisdiction lacking, we may "in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought." In that case, the action "proceed[s] as if it had been filed in" that court on the date on which it was filed in this court. 28 U.S.C. § 1631. The petitioner could and should have brought this action in the district court. *See id.* § 1331. Dismissing the petitions, however, would serve no purpose other than prolonging the litigation.

We therefore transfer the petitions "in the interest of justice" to the United States District Court for the District of Columbia. 28 U.S.C. § 1631.

*So ordered.*