# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 14, 2016   Decided May 26, 2017

No. 15-1096

ROBERT W. RODRIGUEZ,
PETITIONER

v.

VIRGINIA S. PENROD, CHIEF OF STAFF FOR THE OFFICE OF THE
UNDER SECRETARY OF DEFENSE FOR PERSONNEL AND
READINESS, UNITED STATES DEPARTMENT OF DEFENSE,
RESPONDENT

———

On Petition for Review of an
Order of the Department of Defense

———

*Joseph E. Schmitz* argued the cause for petitioner. With him on the briefs was *Paul D. Kamenar*.

*Patrick G. Nemeroff* argued the cause for respondent. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General at the time the brief was filed, and *Marleigh D. Dover*, Attorney. *Thomas G. Pulham*, Attorney, entered an appearance.

2

Before: SRINIVASAN, MILLETT, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  Lieutenant Colonel Robert Rodriguez, a retired member of the Army National Guard, claims that the Army unlawfully relieved him of command in retaliation for whistleblowing, in violation of the Military Whistleblower Protection Act of 1988 ("Whistleblower Act"), 10 U.S.C. § 1034.  But first we must decide where Rodriguez's claim should be litigated—should he have started in district court or did he properly proceed directly to this appellate court?  The default rule is that jurisdiction starts with the district court, and that default rule applies here.  We accordingly order that this action be transferred to the United States District Court for the District of Columbia.

# I

## A

The Whistleblower Act prohibits "tak[ing] (or threaten[ing] to take) an unfavorable personnel action, or withhold[ing] (or threaten[ing] to withhold) a favorable personnel action, as a reprisal against a member of the armed forces" for making protected whistleblowing communications. 10 U.S.C. § 1034(b) (2015).  Any member of the armed forces who believes he was subjected to such reprisal may submit an allegation to an Inspector General within the Department of

Defense, including within the relevant branch of the armed services. *See id.* § 1034(c)(1), (j)(2)(A), (j)(2)(C).[1]

The Inspector General who receives the allegation shall then "determine * * * whether there is sufficient evidence to warrant an investigation" into the matter. 10 U.S.C. § 1034(c)(4)(A). If there is, the Inspector General must undertake that investigation and report the results to the Secretary of Defense and the Secretary of the relevant military department. *Id.* § 1034(c)(4)(D), (e)(1). If the Secretary of the relevant military department then finds a "sufficient basis to conclude" that a prohibited reprisal has occurred, *id.* § 1034(f)(1), the Secretary may order corrective action, *id.* § 1034(f)(2)–(3).

After the Inspector General reports the results of the investigation, the service member may seek additional relief from a board for the correction of military records, established pursuant to 10 U.S.C. § 1552. *See* 10 U.S.C. § 1034(g). The board reviews the report prepared by the Inspector General, *id.* § 1034(g)(2)(A), and subsequently forwards its proposed decision to the Secretary of the relevant military department, *see, e.g.*, 32 C.F.R. § 581.3(g)(2)(ii)(B). That Secretary must then issue a final decision on the matter and take appropriate corrective action. 10 U.S.C. § 1034(g)(4)–(5).

Once administrative review is completed, a service member who is still not satisfied with the disposition of his claim may submit the matter to the Secretary of Defense for further review. 10 U.S.C. § 1034(h). Under Section 1034(h),

---

[1] In some circumstances (not relevant here), claims may also be submitted to and processed by the Inspector General of the Department of Homeland Security. *See* 10 U.S.C. § 1034(c)(1), (j)(2)(B). Our discussion of the statutory scheme focuses on submissions within the Defense Department.

the Secretary of Defense "shall make a decision to reverse or uphold the decision of the Secretary of the military department concerned" within ninety days of receiving the member's request for review. *Id.*

**B**

Starting in 1995, Rodriguez served as a Lieutenant Colonel in the New York Army National Guard, commanding the 1st Battalion, 105th Infantry Regiment, 27th Infantry Brigade. In July 1996, Rodriguez's Brigade Commander, with the concurrence of the Commanding General of the New York Army National Guard, Brigadier General Robert Rose, relieved Rodriguez of command. The stated reasons for that decision were Rodriguez's alleged failure to prevent soldiers from going absent without leave ("AWOL") and other losses in his battalion, which showed up to training with more than ninety unaccounted-for members.

Rodriguez complained to the Adjutant General of the New York Army National Guard that he had been improperly relieved of command. The National Guard thereafter determined that Rodriguez had failed to control his battalion's losses and AWOLs, and that Rodriguez should be reassigned.

After Rodriguez was reassigned, Brigadier General Rose issued Rodriguez a letter of reprimand for "fail[ing] to control the AWOLs" and for his "lack of attention to strength maintenance throughout [his] battalion." D.A. 217. Rodriguez promptly requested that Brigadier General Rose withdraw the letter of reprimand and that the Adjutant General expunge any record of the reprimand from his personnel file.

In April 1997, the Adjutant General directed Brigadier General Rose to remove the letter of reprimand from

Rodriguez's personnel file, citing an agreement between the Adjutant General and Rodriguez that "no further adverse action would be taken against [him]" with respect to the matter of troop loss and AWOLs. D.A. 280.

Around that same time, Rodriguez filed a whistleblower complaint with the Department of Defense, in which he alleged that Brigadier General Rose and others took actions against him in reprisal for making unspecified whistleblower communications. Then, in November 1997, Rodriguez's position in the National Guard was either "eliminated by State headquarters," Pet. Br. 10, or "downgraded due to reorganization," Resp. Br. 7. As a consequence, Rodriguez transferred to the Retired Reserve.

Rodriguez's whistleblower complaint was reviewed by the Department of the Army Inspector General. After a couple rounds of review, the Inspector General ultimately concluded, in 1999, that all of Rodriguez's claims of reprisal lacked merit.

A decade later, in September 2009, Rodriguez filed an application for relief with the Army Board for Correction of Military Records, again raising his allegations of reprisal. The Army Board rejected, in relevant part, his reprisal claims and requests for relief. The Board also denied Rodriguez's request for reconsideration.

As authorized by Section 1034(h) of the Whistleblower Act, 10 U.S.C. § 1034(h), Rodriguez appealed the Board's decision to the Secretary of Defense. The Secretary, however, delegated his authority to review Section 1034(h) appeals to the Chief of Staff for the Office of the Under Secretary of Defense for Personnel and Readiness, Pasquale Tamburrino. In January 2013, Tamburrino affirmed the Board's decision.

Rodriguez filed a petition for review of Tamburrino's decision in this court, *Rodriguez v. Tamburrino*, *petition docketed*, No. 13-1192 (D.C. Cir. May 31, 2013). After the parties reached a settlement agreement, we granted Rodriguez's motion to dismiss his petition without prejudice. Under the settlement agreement, Virginia Penrod, the newly assigned Chief of Staff for the Office of the Under Secretary of Defense for Personnel and Readiness, agreed to "reconsider" Tamburrino's decision. D.A. 627.

On March 6, 2015, Penrod issued her decision on reconsideration, upholding the decision of the Army Board for Correction of Military Records and denying Rodriguez's requests for relief. Rodriguez again sought review directly in this court.

**II**

We begin, as we must, "with the question of our jurisdiction." *Sierra Club v. FERC*, 827 F.3d 36, 43 (D.C. Cir. 2016) (quoting *Brotherhood of Locomotive Eng'rs & Trainmen v. Surface Transp. Bd.*, 457 F.3d 24, 27 (D.C. Cir. 2006)). Jurisdiction in the federal courts of appeals hinges on two things: "'[t]he Constitution must have given to the court the capacity to take [the case], *and an act of Congress must have supplied it*.'" *Micei Int'l v. Department of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) (quoting *Mayor v. Cooper*, 73 U.S. (6 Wall.) 247, 252 (1868)). Rodriguez indisputably has been personally and directly aggrieved by the Defense Department's decision on his claim, so the question in this case is one of statutory, not constitutional, jurisdiction. That predicate statutory inquiry is essential to our power to decide this case: "without statutory authorization," "federal courts have no jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Rodriguez's jurisdictional task is particularly difficult because federal courts of appeals generally are courts of review, not first view. *See Texas v. United States*, 798 F.3d 1108, 1115 (D.C. Cir. 2015). Yet Rodriguez seeks to bypass the district court and obtain review in the first instance in the court of appeals. That is permissible "only when authorized by a specific direct-review statute." *Loan Syndications & Trading Ass'n v. SEC*, 818 F.3d 716, 719 (D.C. Cir. 2016). Otherwise, "the 'normal default rule' is that 'persons seeking review of agency action go first to [a federal] district court.'" *National Auto. Dealers Ass'n v. Federal Trade Comm'n*, 670 F.3d 268, 270 (D.C. Cir. 2012) (quoting *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007)).[2]

Rodriguez seeks review of a decision by the Secretary of Defense under 10 U.S.C. § 1034(h). But nothing in Section 1034(h) or any other provision of the Whistleblower Act provides for direct review in the courts of appeals. To the contrary, as Rodriguez admits, the entire Whistleblower Act is "silent" on the question of judicial review. Pet. Reply Br. 2. In this jurisdictional context, silence has meaning: the default rule of district court jurisdiction applies. *See NetCoalition v. SEC*, 715 F.3d 342, 347 (D.C. Cir. 2013) ("[U]nless the Congress has * * * *expressly* supplied the courts of appeals with jurisdiction to review agency action directly, an [Administrative Procedure Act] challenge falls within the general federal question jurisdiction of the district court and must be brought there ab initio.") (emphasis added).

---

[2] *See also American Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) ("Initial review [of agency action] occurs at the appellate level only when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action.") (quoting *Watts*, 482 F.3d at 505).

Reinforcing the point, the Whistleblower Act's provision for seeking relief from boards for correction of military records, 10 U.S.C. § 1034(g)(1), similarly says nothing about direct review in the federal courts of appeals, and district courts have routinely reviewed those board decisions in the first instance. *See, e.g.*, *Kidwell v. Department of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 283–284 (D.C. Cir. 1995).

Rodriguez points to the Administrative Procedure Act ("APA"), which authorizes judicial review of agency action under specified circumstances. *See* 5 U.S.C. §§ 701–706. That is of no help to Rodriguez, for two reasons.

First, the APA creates a cause of action, not jurisdiction. *See Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 185 (D.C. Cir. 2006) ("[T]he APA does not confer jurisdiction," but "its judicial review provisions do provide * * * a limited cause of action for parties adversely affected by agency action.") (citation omitted). In other words, the APA "says *how* to review agency actions"; "it says next-to-nothing about *where* that review should take place (*e.g.*, in particular district courts or courts of appeals)." *Loan Syndications*, 818 F.3d at 719.[3]

Second, unless Congress expressly says otherwise, APA review takes place first in the federal district courts, not the courts of appeals. *Micei*, 613 F.3d at 1152 ("[I]n the absence of a provision authorizing review in the court of appeals, challenges to agency action to which the APA's judicial review provisions apply fall within the district court's federal question

---

[3] *See also Califano v. Sanders*, 430 U.S. 99, 105 (1977) ("[T]he APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.").

jurisdiction[.]") (citing *Bell v. New Jersey*, 461 U.S. 773, 777 & n.3 (1983)).

Finally, Rodriguez asks this court to ground jurisdiction in our "equitable powers." Pet. Br. 3 (quoting *Nader v. Volpe*, 466 F.2d 261, 269 (D.C. Cir. 1972)). That we cannot do. This court is a "creature[] of statute and possess[es] no jurisdiction except as afforded by congressional enactment." *Owens v. Republic of Sudan*, 531 F.3d 884, 887 (D.C. Cir. 2008).

Accordingly, there is no legal basis for this court to exercise direct-review jurisdiction over Rodriguez's challenge to the Secretary of Defense's decision under Section 1034(h).

We need not dismiss the petition altogether, however. Under 28 U.S.C. § 1631, we "shall, if it is in the interest of justice, transfer [the] action * * * to any other * * * court in which the action * * * could have been brought at the time it was filed or noticed[.]" Given the resources and time already invested in this matter by both parties, we conclude that transfer is warranted. *See generally Five Flags Pipe Line Co. v. Department of Transp.*, 854 F.2d 1438, 1442 (D.C. Cir. 1988); *Professional Managers' Ass'n v. United States*, 761 F.2d 740, 745 n.5 (D.C. Cir. 1985). Accordingly, we order the action transferred to the United States District Court for the District of Columbia.

*So ordered.*