NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RONALD BIAS,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2017-2116

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00634-CFL, Judge Charles F. Lettow.

---

Decided: January 26, 2018

---

RONALD BIAS, Richmond, TX, pro se.

MICHAEL D. SNYDER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

---

Before LOURIE, O'MALLEY, and HUGHES, *Circuit Judges.*

PER CURIAM.

Ronald Bias was mistakenly retired from the United States Marine Corps in 2006, before he had accrued sufficient service time to render him eligible for retirement. After receiving retirement pay for about three years, the mistake was discovered and he returned to active duty until his ultimate retirement in 2010. At the trial court and here on appeal, Mr. Bias makes two primary arguments: (1) that he should have received full back pay during the period of his mistaken retirement; and (2) that his 2010 retirement was involuntarily caused by a retaliatory order to change duty stations. We conclude that the Court of Federal Claims lacked jurisdiction to consider these arguments. Thus, we affirm in part and reverse in part.

I

This case has a lengthy factual and procedural history, much of which is detailed in the thorough decision from the Court of Federal Claims. We presume familiarity with the facts and only recite those that are necessary to this decision.

Mr. Bias is a retired Lieutenant Colonel in the United States Marine Corps, where he served both on active duty and in the active reserve. After being notified that he had completed twenty years of qualifying service and was eligible for active duty retirement, he initially retired on November 1, 2006.

That notification turned out to be in error. When Mr. Bias retired, he actually had accumulated only eighteen years and approximately nine months of active duty service, not the twenty years of service previously attributed to him. Accordingly, in 2009, the Marine Corps notified Mr. Bias that he must return to active duty and serve until he accumulated twenty years of service to qualify for retirement or otherwise be discharged.

Mr. Bias was also notified, around the same time, that he would be required to repay the retirement pay he had improperly received.

Mr. Bias returned to active duty in 2009 as an instructor. While he was on active duty as an instructor, he received permanent change of station orders. Rather than comply with those orders, he chose to retire on November 1, 2010. By then, he had accrued more than twenty years of active service and was eligible for retirement pay.

Multiple proceedings then occurred in the Board for Correction of Naval Records and at the Court of Federal Claims. Ultimately, the Board found, as a matter of equity, that he should be considered a de facto retiree from the date of his original incorrect retirement in 2006, and thus directed that his records be corrected to reflect that conclusion. That decision also meant that his retirement pay indebtedness would be waived.[1]

Mr. Bias then filed a second amended complaint, challenging the Marine Corps's actions that resulted in his 2006 and 2010 retirements. And he alleged that the Board granted him only partial relief through the de facto retirement status. He sought retroactive reinstatement to active duty as of November 1, 2006 with full back pay and allowances, as well as correction of his administrative records. He also requested that the court void his 2010

---

[1] The Defense Finance and Accounting Service (DFAS) explained that the "De Facto Retired Member" doctrine aims to prevent hardship by allowing an erroneously retired service member to retain the already received retirement pay, even as the member returns to active duty to accumulate the twenty years of service necessary to qualify for retirement.

retirement and place him in de facto retirement status starting November 1, 2010, purportedly so he could claim retroactive reinstatement to active duty and back pay from November 1, 2010 while retaining the retirement benefits that he had already received since his retirement.

The Court of Federal Claims found that it had Tucker Act jurisdiction over Mr. Bias's claims for back pay and allowances arising from his 2006 retirement and that the statute of limitations had not expired, but found that he failed to show that the Board committed reversible error. The court also found that it lacked jurisdiction over whistleblower retaliation and privacy violation claims arising from his 2010 retirement.

Mr. Bias appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3). We agree with the trial court that it lacked jurisdiction over the claims arising from the 2010 retirement, but disagree that the court possessed jurisdiction over the claims arising from the 2006 retirement. Those claims were barred by the applicable statute of limitations, which in the Court of Federal Claims is jurisdictional.

## II

### A

Mr. Bias challenged his 2006 retirement, claiming entitlement to full back pay and allowances, correction of his administrative records, and retroactive reinstatement to active duty as of November 1, 2006 by alleging, at bottom, a wrongful discharge claim. The Court of Federal Claims determined that the Military Pay Act, 37 U.S.C. § 204, provided it with the Tucker Act jurisdiction over those

claims.[2] We review a decision of the Court of Federal Claims regarding its own jurisdiction de novo. *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016).

The Court of Federal Claims may hear a claim arising under the Tucker Act only if the claim first accrued within six years of the filing of the complaint. 28 U.S.C. § 2501; *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (en banc). This statute of limitations is jurisdictional in nature and is strictly construed. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008).

The Court of Federal Claims found that the six-year statute of limitations had not expired on Mr. Bias's claims relating to his 2006 retirement because those claims did not accrue until 2009, when the Marine Corps notified him about the error regarding his retirement eligibility and directed him to either return to active duty or be discharged. But a claim accrues for purposes of 28 U.S.C. § 2501 "'when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (quoting *Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006)). Indeed, "a Tucker Act claim for back pay accrues all at once at the time of discharge; the claim for back pay is not a 'continuing claim' that accrues each time a payment would be due throughout the period that the service member would have remained on active duty." *Martinez*, 333 F.3d at 1303 (citations omitted).

---

[2] Mr. Bias alternatively relies on 10 U.S.C. § 6323 to establish jurisdiction. Because he did not claim entitlement to retirement pay, § 6323 is irrelevant to the jurisdictional analysis.

Here, the claims accrued on the date of Mr. Bias's discharge from the service—November 1, 2006—when he ceased receiving active duty pay and allowances to which he now claims he is entitled. *See Bowen v. United States*, 292 F.3d 1383, 1385–86 (Fed. Cir. 2002) (holding that a claim for military back pay accrued when the service member was informed that the Army considered him released from active duty, and when he ceased receiving military pay from the Army). "[T]he statute of limitations for Tucker Act claims is not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim." *Martinez*, 333 F.3d at 1312. Accordingly, Mr. Bias's petition to the Board did not toll the statute of limitations for his entitlement to back pay.

Mr. Bias's entitlement to back pay was also not contingent on the DFAS asking him to pay back the retirement benefits that he had earned between 2006 and 2009. DFAS's notification was grounded in an administrative error—the Marine Corps's miscalculation of Mr. Bias's retirement eligibility. That miscalculation had already occurred before he chose to retire, entitling him to institute an action immediately upon his retirement from active duty. Indeed, the fact that Mr. Bias relied on the administrative error before proceeding to request retirement, *see* Appx 9,[3] bolsters the conclusion that all events entitling him to institute an action for back pay had occurred prior to his retirement, regardless of how he chooses to characterize his claims. The date of the DFAS notification would have been relevant to the statute of limitations to challenge DFAS's decision to collect the retirement indebtedness, but that issue was obviated by the Board's decision to waive collection.

---

[3]    "Appx" refers to Appendix A attached to Mr. Bias's opening brief.

It is immaterial whether Mr. Bias subjectively knew about the administrative error or whether it was the 2009 notice that alerted him to the possibility of his claims for back pay and allowances. *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995) ("The question whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue."). The 2009 notice did not alter the nature of the administrative error by the Marine Corps, the actual factual predicate of his claims. Indeed, the Court of Federal Claims found that "[t]he Marine Corps learned of its mistake in 2009," Appx 2, not that Mr. Bias was wrongfully discharged in 2009. The mere fact that the Marine Corps erroneously informed Mr. Bias that he had the option to retire entitled him to sue immediately upon his retirement.[4]

Mr. Bias filed his suit in the Court of Federal Claims on June 19, 2015, but his active duty service between August 1, 2009 and October 31, 2010 tolled the limitations period for fifteen months, *see* 50 U.S.C. § 3936(a). For his claims to be timely, Mr. Bias's claims must have accrued on or after March 19, 2008—that is, six years prior to the date he filed his complaint plus the fifteen month tolling period. Because the claims accrued on November 1, 2006, the Court of Federal Claims lacked

---

[4] Regardless, Mr. Bias petitioned the Board in July 2007, seeking reinstatement to active duty as of November 1, 2006 as well as back pay and allowances. This suggests, at a minimum, that Mr. Bias was aware that his retirement on November 1, 2006 accrued his claims for back pay and allowances, albeit under a different alleged administrative error.

jurisdiction to hear Mr. Bias's claims based on his 2006 retirement.

B

Mr. Bias also challenged his 2010 retirement, alleging retaliation and privacy violations and requesting that the Court of Federal Claims void his 2010 retirement. The court found that it lacked jurisdiction over those claims. Mr. Bias argues on appeal that the court erred because it maintains jurisdiction over a final agency action, in this case a determination by the Board that the evidence did not support his claims of whistleblower retaliation and violations of his privacy. But the Court of Federal Claims lacks jurisdiction over claims where, as here, the factual underpinnings of the claims presented to the agency, or for that matter to the court, lie entirely in whistleblower retaliation under the Military Whistleblower Protection Act (MWPA), 10 U.S.C. § 1034, or privacy violations under the Privacy Act of 1974, 5 U.S.C. § 552a.

The MWPA provides for a comprehensive administrative review scheme over claims of retaliation—specifically, the correction of military records and disciplinary actions as remedies for prohibited actions—but no private right of action for money damages, which could be enforced in the Court of Federal Claims. Indeed, no judicial review is available under the MWPA because Congress precluded alternative fora by providing a specific form of redress in the statute. *See Klingenschmitt v. United States*, 119 Fed. Cl. 163, 185 (2014) (explaining that the court lacks jurisdiction over whistleblower retaliation claims because the MWPA's "comprehensive scheme establishes that Congress did not intend to provide plaintiffs with a private cause of action to enforce their rights under the MWPA in court" (citations omitted)), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015), *cert. denied*, 137 S. Ct. 93 (2016); *Rana v. United States*, 664 F. App'x 943, 948 (Fed. Cir. 2016)

(holding that the MWPA is not money-mandating, relying on the fact that the Act "provides for a specific non-monetary remedy—correction of the record of a prohibited personnel action—but does not provide for monetary relief," and affirming the dismissal of a whistleblower claim under the Act), *cert. denied*, 137 S. Ct. 2101 (2017); *Soeken v. United States*, 47 Fed. Cl. 430, 433 (2000) ("Because the Military Whistleblower Protection Act provides strictly administrative remedies, plaintiff does not have a private cause of action on which to file a claim in this court."), *aff'd*, 20 F. App'x 900 (Fed. Cir. 2001); *Acquisto v. United States*, 70 F.3d 1010, 1011 & n.2 (8th Cir. 1995) (reviewing "the statutory language, the legislative history, and administrative regulations" and holding that § 1034 does not provide a service member "with any private cause of action, express or implied"); *Penland v. Mabus*, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) ("[T]he MWPA does not provide a private cause of action." (citing *inter alia Acquisto*, 70 F.3d at 1011)). *But see Rodriguez v. Penrod*, 857 F.3d 902, 906 (D.C. Cir. 2017) (observing that because "the entire Whistleblower Act is 'silent' on the question of judicial review," including the provision for seeking relief from "boards for correction of military records," "district courts have routinely reviewed those board decisions in the first instance." (citing *inter alia Kidwell v. Dep't of Army, Bd. for Corr. of Military Records*, 56 F.3d 279, 283–84 (D.C. Cir. 1995))).

And while "the Privacy Act creates a civil cause of action for monetary damages, the Act expressly vests jurisdiction for such claims in the United States District Courts." *Parker v. United States*, 77 Fed. Cl. 279, 291 (2007) (citing 5 U.S.C. § 552a(g)(1)), *aff'd*, 280 F. App'x 957, 958 (Fed. Cir.) ("[T]o the extent Mr. Parker intended to bring a claim under the Privacy Act, the Court of Federal Claims is not the proper forum for such action."), *reh'g and reh'g en banc denied* (Fed. Cir. 2008); *Conner v. United States*, 641 F. App'x 972, 975 (Fed. Cir. 2016) ("We

. . . agree with the Claims Court that it lacks jurisdiction over Privacy Act claims . . . because the federal district courts possess exclusive jurisdiction over such matters." (citations omitted)); *see also Frazier v. United States*, 683 F. App'x 938, 940 (Fed. Cir. 2017) (rejecting outright that the Privacy Act contains money-mandating provisions that would give the Court of Federal Claims jurisdiction over claimed violations of the Act). It is unremarkable that "[t]he Court of Federal Claims 'does not have jurisdiction to review the decisions of district courts.'" *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (quoting *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)).

## III

Because the Court of Federal Claims lacked jurisdiction over Mr. Bias's claims of wrongful discharge in 2006, we reverse the court's denial of the United States' motion to dismiss for lack of jurisdiction. Because the court additionally lacked jurisdiction over Mr. Bias's claims of wrongful discharge in 2010, we affirm the court's dismissal of those claims.

**REVERSED-IN-PART AND AFFIRMED-IN-PART**

COSTS

No costs.